ROBERTS *v.* WARDEN OF MARYLAND PENITENTIARY

[No. 40, October Term, 1954.]

*Application for leave to appeal granted June 23, 1954.*

*Decided February 10, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Frank T. Gray* for the appellant.

*James H. Norris, Jr., Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *Anselm Sodaro, State's Attorney for Baltimore City,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

In this case, we granted an application for leave to appeal from the denial of a writ of *habeas corpus* and appointed counsel to aid appellant in the presentation of the appeal.

While the appellant was at liberty on a suspended sentence, the Grand Jury of Baltimore returned five separate indictments against him in which he was charged, respectively, with being a rogue and a vagabond, with assault on a named police officer, with assault on another named police officer, possession of a deadly weapon, and theft of an automobile. Each of the assault indictments

contained three counts, charging, respectively, assault with intent to murder, simple assault, and assault on a police officer. (It may be said in passing that although it seems to be common practice in Baltimore to include a count of assault on a policeman in assault indictments, we are not aware of, nor have we been referred to, any common law or statutory authority which establishes such a crime as distinguished from assault on anyone else). His attorney of his own choice entered a plea of guilty to the second count of each of the assault indictments; that is, a plea of guilty to simple assault, and the same plea to the crime charged in each of the other three indictments. He was given consecutive sentences of two years for being a rogue and vagabond; of twenty years on each charge of simple assault; of two years for possession; and of ten years for theft; so that the toal term of imprisonment amounted to fifty-four years.

The appellant bases his right to the issuance of the writ on two claims. The first is that his then attorney was in collusion with the State, in that he apoligized for representing the appellant, expressed his friendship for the two police officers who had been assaulted; stated that no fee would be received, and then, without authority and against the wishes of the appellant, entered pleas of guilty. The result, it is argued, is that there was no trial within the requirements of due process. The second is that the sentence on each conviction of assault exceeds that permitted by law, and, as to the excess, he is illegally confined.

As part of the first claim, it is said that the docket entries show that there was no appearance of counsel entered for the appellant in the charge of assault on which he was first sentenced. From this, it is argued that the entering of a plea of guilty by his counsel was a nullity as to that charge, with the consequence that he is now imprisoned on a sentence imposed without plea or trial.

We think that there can be found no support for the appellant's first contention. The transcript shows that

at the trial of the appellant and a co-defendant on March 3, 1953 in the Criminal Court of Baltimore, appellant's attorney asked to be allowed to enter ·pleas of *nolo contendere*. The court refused to accept these and indicated that the pleas of not guilty, which had been previously entered, would continue. At this point, appellant's counsel said: "I will change my pleas to guilty." The clerk then asked: "In each case as to Robert Roberts?" to which the appellant's attorney answered: "Yes, sir". The court then said: "Guilty as to Roberts in each case." After this, counsel for the co-defenant said that he would be satisfied to have the matter submitted to the court as far as his client was concerned, on a statement of the facts, and the State's Attorney then made such a statement. Following this, the police officer, at whom the shot had been fired, took the stand and testified to the shooting. Another policeman testified to events which followed the arrest of those accused. Appellant's counsel cross-examined the latter as to Roberts' actions and his sobriety. Roberts himself took the stand. After he had been questioned by counsel for the co-defendant, he testified at length in his own defense. He frankly and specifically admitted from the stand that the State had a case against him for larceny, possession of the gun and the assaults, but complained that the newspapers had magnified the happenings out of all proportion. He said that he struck one officer to keep from being shot and attempted to explain the shooting at the other as an accident. His testimony and cross-examination, including numerous questions by the court, covering over twenty pages of the transcript.

We think it clear that no showing has been made of lack of due process. The transcript seems complete. It is barren of any hint that appellant's counsel indicated his distaste for the case or friendship for the prosecuting witnesses. That the pleas of guilty were justified is shown by appellant's conduct. He had many prior convictions. Neither the courtroom nor criminal procedures were novel to him. He stood silent when his counsel

told the court that the pleas were changed to guilty, as he did when the clerk and the court, in turn, reiterated that the plea applied to each case. On the stand, he admitted he was guilty, at least technically, in the very assault charge as to which he now says the plea was not entered and as to which he had no trial. He was silent in the face of protracted opportunity to express dissatisfaction with his counsel and to reject the plea which had been entered. There can be no possible doubt, we think, that the pleas were entered in his presence with his full knowledge and acquiscence. Only the severity of the sentences, it would seem, prompted the claims as to lack of due process now relied on.

We have held repeatedly that mere allegation of collusion, which is not supported, will not avail on *habeas corpus*, nor will the statement of incompetence or lack of interest of counsel, when it is shown that the appellant had the opportunity to complain to the court and did not. *Obenstine v. Warden,* 198 Md. 648; *Rountree v. Wright,* 189 Md. 292; *Walker v. Warden,* 190 Md. 729; *Ahern v. Warden,* 203 Md. 672; *Carroll v. Warden,* 201 Md. 647; *Johnson v. Warden,* 200 Md. 654; *Gillum v. Warden,* 200 Md. 656; *Thanos v. Supt.,* 204 Md. 665; *Stokes v. Warden,* 205 Md. 629.

The appellant argues earnestly and cogently that the sentences of twenty years for assault are illegal. He says: (a) Code (1951), Art. 27, Sec. 14, provides a maximum penalty of ten years for conviction of assault with intent to rob, the same maximum for assault with intent to have carnal knowledge, and fifteen years maximum for assault with intent to murder; (b) the assault referred to in the statute is the ordinary, common law assault; (c) to this must be added the requisite intent if the specified crime is to be found. From this premise, appellant reasons that simple assault is a lesser criminal offense than each of the crimes mentioned in the statute, and for its commission there cannot be imposed a sentence in excess of the maximum provided by the Legislature in the statute.

As has been noted, the appellant, in pleading to each of the indictments for assault, pleaded guilty only to the count charging simple assault. He argues that this is a concession, binding the State, that he committed a lesser crime than assault with intent to murder. He makes this contention with full recognition that this Court has held, as recently as *Heath v. State,* 198 Md. 455, 467, that: "In this State there is no statutory limitation upon the amount of punishment in cases of assault and battery and there was no limitation at common law. *Apple v. State,* 190 Md. 661, 668, 59 A. 2d 509." He recognizes, too, as was stated in the *Heath* opinion, that it has been the judicial habit to look to the attendant facts in each case of assault and to find an assault to be more or less enormous, according to the facts. Nevertheless, he presents the argument that even under these limitations there must be inferred a legislative policy which limits sentences in cases of common assault to not more than that provided for more serious assaults. He says: "Here, the expressed policy of the Legislature as to maximum sentence in assault cases is clear. The more dangerous types of assault carry a maximum sentence of 10 years and, in the case of assault with intent to murder, of 15 years. The lesser offense of simple assault must, *a fortiori,* carry no greater penalty than the more serious crimes which go beyond simple assault. The absurdity of a contrary view is obvious. If a 20 year sentence for simple assault is proper, the State finds itself restricting the testimony that is being presented lest it prove too much and establish that the defendant actually had an intention to rob the prosecuting witness when he assaulted him. The State would fear that, having proved an intent to rob, the Court would be limited to 10 years as a maximum penalty. And, from the other side of the Courtroom, the defense would be rushing in to prove an intent to rob so as to restrict the sentence imposed to a maximum of 10 years. The maximum imposed by the Legislature as to assault with intent to rob would be perfectly meaningless, because in any

case where there is assault with intent to rob there must also be a simple assault; and if it chooses to do so, the Court can ignore the intention to rob in order to retain the right to impose a higher sentence, thereby defeating legislative intention as to the maximum sentence."

Appellant argues further that even if the assault sentences are "* * * technically within the statute", they are unreasonably excessive so as to be inordinately disproportionate to the offense committed. It is suggested that the excessiveness of the sentence can be raised by *habeas corpus, Casey v. Warden,* 198 Md. 645, and on this assumption, *Mitchell v. State,* 82 Md. 527, 534, is relied on. There the severity of sentence was an issue on appeal and the Court said: "Even where the law confides to the Judge the imposition of the sentence without definite limit, it still may be possible to violate the Declaration of Rights. If the punishment is grossly and inordinately disproportionate to the offense so that the sentence is evidently dictated not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive, the judgment ought to be reversed, and the cause remanded for a more just sentence." In *Reid v. State,* 200 Md. 89, 93, the Court repeated the statement quoted from the *Mitchell* case and added: "The reports of this court disclose no case in which such action has ever been taken by it * * * In the case before us, we see no occasion to hold that the punishment comes within the exception stated in *Mitchell v. State, supra.* The crime was an atrocious one, apparently without any mitigating circumstances * * *." In *Delnegro v. State,* 198 Md. 80, 88, the Court noted that the term "cruel and unusual punishment", as prohibited by the Constitution of Maryland, "has usually been understood to mean barbarous punishment by torture", such as the whipping post, pillory, or breaking on the wheel, and that the term does not forbid imprisonment for years or for life. Cases from other States are relied on to sustain the statement. The opinion goes on, however, to say: "On the other hand, the Supreme Judicial Court of Massachusetts ex-

pressed the opinion in *McDonald v. Commonwealth,* 173 Mass. 322, 53 N.E. 874, 73 Am. St. Rep. 293, that imprisonment in the state prison for a long term of years might be so disproportionate to the offense as to constitute a cruel and unusual punishment." The statement last quoted has received recognition elsewhere. See 15 Am. Jur., *Criminal Law,* Sec. 535, p. 178. Various courts, while recognizing the general rule that cruel and unusual punishment originally referred to, and usually is deemed still to refer to, corporal punishment, have held that sentences so long as to shock the moral sense of all reasonable men as to what is proper under the circumstances, and so, the conscience of the court, may be the subject of redress on appeal, as inordinately disproportionate to the gravity of the offense, even in the absence of statutory power to review sentences. In *State v. Kimbrough* (S. C.), 46 S. E. 2d 273, the defendant was sentenced to thirty years for burglary in the face of a recommendation of mercy by the jury. The statute provided a minimum but no maximum sentence. The conviction was affirmed but the sentence was set aside and the case remanded. See also *State v. White* (S. C.), 55 S. E. 2d 785, 788; *State v. Green* (S. C.), 67 S. E. 2d 509, 515; *State v. Ross* (Ore.), 104 P. 596, 106 P. 1022; *Nowling v. State* (Fla.), 10 S. 2d 130; *State v. Driver,* 78 N. C. 423; and *State v. Fairbanks* (Wash.), 171 P. 2d 845.

We find that the appellant is not entitled to have his contentions considered in the pending application for *habeas corpus.* Assuming, without deciding, that the excessiveness of sentence could be considered on *habeas corpus,* the appellant cannot be heard until he has served so much of the sentence as was within the power of the Court to impose. *Hunter v. Warden,* 198 Md. 655. In that case, the petitioner was sentenced to eighteen years for assault with intent to murder. Nearly four years later, the judge who sentenced him discovered that the then maximum sentence for assault with intent to murder was ten years and reduced the sentence to ten years. It was held that the petitioner was in confinement under

the latter sentence of ten years. The Court said: "Even if he were being held under the original sentence, it would be good so far as the power of the court extended, and would be invalid only as to the excess. *State ex rel Johnson v. Wright,* 192 Md. 734, 65 A. 2d 178; *Von Den Bosch v. Swenson,* 194 Md. 715, 70 A. 2d 599. The ten-year sentence which the court was authorized to impose upon the applicant had not yet expired. Until he is detained after the expiration of that period, he is not entitled to a writ of *habeas corpus* to determine the validity of the eighteen-year sentence."

In the case before us, the appellant was first sentenced to two years for being a rogue and vagabond. That sentence will not expire until March, 1955. He was next sentenced to twenty years for assault. He concedes that at least ten years of the second sentence can legally be imposed. The appellant would, therefore, be in legal confinement until 1965 and his application for the writ must be dismissed as premature.

The decision of the Court to dismiss the appeal as premature does not cut off all avenues of relief to the appellant. He, of course, can seek executive clemency. Further, he may seek redress in the courts. Rule 10 (a) of the Criminal Rules of Practice and Procedure provides: "The court may correct an illegal sentence at any time." If the sentences for assault were illegal, as the appellant contends, the trial court has power to correct them, *Hunter v. Warden, supra,* and the mechanics of the correction would seem to include the striking out of the illegal sentences and the imposition of those which are legal. The appellant can file motions in the Criminal Court to strike out the sentences he alleges are illegal. This would require a decision by the trial court of the issues sought to be raised here, and if the court refuses to strike out the sentence, its refusal would constitute action which is appealable to this Court. *Madison v. State,* 205 Md. 425; *Duker v. State,* 162 Md. 546, 549; *Miller v. State,* 135 Md. 379, 382; *Dutton v. State,* 123 Md. 373.

*Appeal dismissed, with costs.*