742 A.2d 508

**STATE of Maryland**

v.

**Deno C. KANARAS.**

**No. 58, Sept. Term, 1998.**

Court of Appeals of Maryland.

Dec. 20, 1999.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., on brief), Baltimore, for petitioner.

William F. Gately (Raymond L. Marshall, Howell, Gately, Whitney & Carter, LLP, on brief), Towson, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to decide two important issues. First, we must resolve a conflict among this Court's prior opinions as to whether Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 645A(e), precludes an appeal from a final circuit court order ruling upon a motion to correct an allegedly illegal sentence. Second, we must decide whether the Court of Special Appeals correctly held that the petitioner's sentence of life imprisonment subsequently became "illegal" under the ex post facto prohibition because "actions by the Parole Commission, Commissioner of Correction, and the Governor have, in effect, changed the life sentence (with an expectation by the sentencing judge of parole in eleven years) to a life sentence without the possibility of parole."

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

## I.

In April 1982, in the Circuit Court for Kent County, Deno C. Kanaras was found guilty of murder and was sentenced to life imprisonment.[1] His conviction was affirmed by the Court of Special Appeals, *Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61 (1983), and this Court denied his petition for a writ of certiorari, *Kanaras v. State,* 297 Md. 109 (1983).

In light of Kanaras's cooperation in the State's investigation of the crime, and his testimony on behalf of the State in the trial of an accomplice, the State's Attorney for Harford County agreed to send, and did send, a letter to the Maryland Parole Commission on behalf of Kanaras. In addition, in denying a motion to reduce Kanaras's sentence in 1984, Judge Rasin of the Circuit Court for Kent County stated: "A life sentence in the State of Maryland ... may be only a matter of eleven-plus years. * * * [I]t's possible that Mr. Kanaras can be released in ... another eight years or so."

What happened next is set forth as follows in the Court of Special Appeals' opinion in the present case:

"Appellant's [Kanaras's] first parole hearing took place in February 1993. Apparently, favorably impressed by appellant's institutional adjustment and record of cooperation in the Huffington prosecution, the commissioners recommended that appellant be assigned to a minimum security institution and that he be placed in work release and family visitation programs. The next parole hearing was scheduled for February 1996. Shortly thereafter, however, an inmate serving a life sentence, while on work release, murdered his girlfriend and committed suicide. As a result, the Commissioner of Correction immediately removed all inmates serving life sentences from work release and family leave programs. The Commissioner also amended Division of Correction Directive 100–1 to the effect that 'an inmate with a life sentence ... shall not be reduced below medium

---

1. The crime occurred in Harford County, but the case was transferred for trial to Kent County.

security.' Because inmates serving life sentences could not be assigned to minimum security and work release and only prisoners with a satisfactory record in minimum security situations and a satisfactory experience on work release could be recommended for parole, parole became an impossibility for inmates in Kanaras's situation.

"A group of inmates challenged this administrative change. in their sentences as amounting to a violation of the Ex Post Facto Clause of the United States Constitution. In the case of *Knox v. Lanham*, 895 F.Supp. 750 (D.Md.1995), Judge Motz found that the continued effect of the amended DCD 100–1 and the Parole Commission's policy was indeed a violation of the Ex Post Facto Clause of the United States Constitution. Judge Motz's opinion was affirmed by the Fourth Circuit in *Lanham v. Knox [Worsham v. Lanham]*, 76 F.3d 377 (4th Cir.1996).

"On September 29, 1995, at a press conference, Governor Glendening announced that there will be no parole granted to inmates serving life sentences for murder or rape, and he directed the Parole Commission not to recommend for his approval any requests for parole for inmates serving life sentences for murder or rape.

"On February 15, 1996, appellant appeared for his second parole hearing. He was informed that, in view of existing DOC and Parole Commission Policy and Regulations, and the Governor's announced policy, the Commission would not consider his application for parole or forward any recommendation to the Governor."

For a discussion of the Parole Commission's and the Governor's policies with regard to the parole of inmates serving life sentences, see our recent opinion in *Lomax v. Warden*, 356 Md. 569, 741 A.2d 476 (1999).

In May 1996, Kanaras filed in the Circuit Court for Kent County a petition under the Maryland Post Conviction Procedure Act, Code (1957, 1996 Repl.Vol.), Art. 27, § 645A, challenging the actions of the Parole Commission, the Commissioner of Correction, and the Governor, and asserting that his

sentence had become "unlawful, illegal and unconstitutional." At the same time, Kanaras filed a separate petition under Maryland Rule 4–345 challenging his sentence because of the actions of the Parole Commission, the Commissioner of Correction, and the Governor. This petition was based on both subsection (a) and subsection (b) of Rule 4–345.[2] Kanaras argued that, because of the actions of the state agencies and officials, his sentence had actually become a sentence of "life imprisonment *without* the possibility of parole," and that this was an illegal sentence which was subject to correction under Rule 4–345(a). Kanaras also argued that the sentence which he was actually serving was the "product of such constructive fraud (perpetrated by the State upon both the Court and the defendant) and/or mistake of fact, and/or irregularity as to vest within this Court revisory power" over the sentence under Rule 4–345(b).

The Circuit Court for Kent County, although stating that Kanaras "may be eligible for some other form of relief," held that he was not entitled to relief under either the Post Conviction Procedure Act or Rule 4–345. The court, therefore, denied both of Kanaras's petitions. In the action under the Post Conviction Procedure Act, Kanaras filed an application for leave to appeal to the Court of Special Appeals.[3] In

---

**2.** Maryland Rule 4–345(a) and (b) provide as follows:

"**Rule 4–345. Sentencing—Revisory power of court.**

"(a) *Illegal sentence.* The court may correct an illegal sentence at any time.

"(b) *Modification or reduction—Time for.* The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (d) of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding."

*     *     *

**3.** There is no right to appeal from a circuit court decision under the Post Conviction Procedure Act. Instead, under Code (1957, 1996

the action under Rule 4–345, Kanaras filed a notice of appeal to the Court of Special Appeals. The State, arguing that no appeal may be taken from a circuit court's ruling under either subsection (a) or subsection (b) of Rule 4–345, filed a motion in the Court of Special Appeals to dismiss Kanaras's appeal from the order denying relief under Rule 4–345. The State relied on *Valentine v. State*, 305 Md. 108, 501 A.2d 847 (1985).

The Court of Special Appeals denied Kanaras's application for leave to appeal in the Post Conviction Procedure Act case. With regard to the action under Rule 4–345, however, the Court of Special Appeals denied the State's motion to dismiss, holding that the Circuit Court's ruling under subsection (a) of Rule 4–345 was appealable under the authority of *State v. Griffiths*, 338 Md. 485, 659 A.2d 876 (1995). The Court of Special Appeals, in an unreported opinion, held that the actions of the Parole Commission, the Commissioner of Correction, and the Governor had the effect of changing Kanaras's sentence from one of life imprisonment to life imprisonment without the possibility of parole. The intermediate appellate court went on to hold that this change violated the ex post facto clauses of the federal and state constitutions[4] and, therefore, rendered Kanaras's sentence illegal. The Court of Special Appeals held that the Circuit Court erred by failing to exercise its authority under Rule 4–345(a) "to correct" the sentence which had become "illegal," and it vacated the judgment of the Circuit Court.

The State then filed in this Court a petition for a writ of certiorari, presenting the following two questions:

"1. Did the Court of Special Appeals err in failing to dismiss a direct appeal from [the ruling on] a motion to correct an illegal sentence under Md. Rule 4–345(a)?

---

Repl.Vol.), Art.27, § 645–I, an application for leave to appeal may be filed.

**4.** *See* Article 1, § 10, cl. 1 of the Constitution of the United States, and Article 17 of the Maryland Declaration of Rights.

"2. May a challenge to policies and procedures relating to parole be asserted against the Governor and the Maryland Parole Commission in a Motion to Correct an Illegal Sentence under Maryland Rule 4–345(a)?"

We granted the State's petition, *State v. Kanaras,* 350 Md. 280, 711 A.2d 871 (1998). We shall hold that the Circuit Court's order was appealable and that the Court of Special Appeals should have affirmed the decision of the Circuit Court.

## II.

■ The Maryland Post Conviction Procedure Act, Art. 27, § 645A(e), first enacted in 1958, provides in pertinent part as follows:

"No appeals to the Court of Appeals or the Court of Special Appeals in habeas corpus or coram nobis cases, or from other common-law *or statutory remedies which have heretofore been available for challenging the validity of incarceration* under sentence of death or imprisonment shall be permitted or entertained, except appeals in such ' cases pending in the Court of Appeals on June 1, 1958, shall be processed in due course." (Emphasis added).

The issue of whether the above-quoted language precludes direct appellate jurisdiction over a circuit court's decision under Rule 4–345(a) has, unfortunately, spawned a plethora of inconsistent opinions by this Court.

Prior to the enactment of the Post Conviction Procedure Act, this Court consistently held that a circuit court's denial of a motion to correct an allegedly illegal sentence was appealable. *See, e.g., Roberts v. Warden,* 206 Md. 246, 255, 111 A.2d 597, 601 (1955); *Duker v. State,* 162 Md. 546, 549, 160 A. 279, 280 (1932); *Miller v. State,* 135 Md. 379, 382, 109 A. 104, 105 (1919); *Dutton v. State,* 123 Md. 373, 378 91 A. 417, 419 (1914).

Two years after the enactment of the Post Conviction Procedure Act, however, this Court in *Brady v. State,* 222 Md. 442, 160 A.2d 912 (1960), with very little reasoning, held that the language of that statute prohibited an appeal from a

circuit court's decision on a motion to correct an illegal sentence under then Maryland Rule 744a, which was later renumbered Rule 764a, and which is now Rule 4–345(a). The Court in *Brady* dismissed the appeal.

The following year, in *Wilson v. State*, 227 Md. 99, 101, 175 A.2d 775, 776 (1961), the Court reaffirmed its holding in *Brady v. State, supra*, reasoning that a motion to correct an illegal sentence under then Rule 744 "is ... to be considered a 'statutory remedy' within the meaning of the Post Conviction Procedure Act," which prohibits appeals "in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of ... imprisonment...." Art. 27, § 645A(e). Although the *Wilson* opinion went on briefly to discuss in dicta the merits of the appeal, the Court's judgment was "appeal dismissed."

A shift occurred in *Costello v. State*, 237 Md. 464, 206 A.2d 812 (1965). After the defendant Costello was sentenced, he filed a motion to correct the sentence, asserting that the trial judge used improper information in imposing sentence and, furthermore, failed to allow the defendant to rebut other information. According to the defendant, the trial judge's actions in sentencing deprived him of procedural due process, resulting in an illegal sentence. The trial court denied the motion, and the defendant appealed. The State moved to dismiss the appeal, and this Court in its opinion responded as follows (*Costello v. State, supra*, 237 Md. at 469–470, 206 A.2d at 815):

"The State contends further that, in any event, the Uniform Post Conviction Procedure Act, Code (1957) Article 27, Section 645A(b) (1963 Supplement), provides that no direct appeal lies from the denial of a motion by the trial court for modification or reduction of the sentence. We agree. *Wilson v. State*, 227 Md. 99, 100–101, 175 A.2d 775 (1961) and cases therein cited. However, because in this case the proceedings on the motion were closely related to those in the imposition of the sentence, and, as in *Wilson*, to avoid the delay and expense of a remand to permit the bringing

up of the question on a petition for post-conviction relief, we shall indicate our views on the merits."

The Court in *Costello*, however, did more than "indicate" its views on the merits. It discussed in detail the merits, held that the trial judge had not erred in imposing sentence, and concluded: "We have considered all of the appellant's contentions, and find no violation of any of his constitutional or legal rights." 237 Md. at 474, 206 A.2d at 818. More significantly, instead of dismissing the appeal as was done in *Brady* and *Wilson*, the Court in *Costello* "affirmed" the trial court's judgment. *Ibid.* Interestingly, the judge who had authored the *Brady* opinion for the Court dissented in *Costello*, not on the ground that the appeal should have been dismissed, but on the ground that the appellant had been illegally sentenced and that, therefore, the judgment below should be reversed.

Another shift, back to the holdings in *Wilson* and *Brady*, took place in *Burley v. State*, 239 Md. 342, 344, 211 A.2d 714, 715 (1965), and *Harris v. State*, 241 Md. 596, 217 A.2d 307 (1966). In *Burley*, the Court dismissed the appeal from the denial of a motion to set aside the judgment on the ground of "fraud, mistake or irregularity," stating that the Post Conviction Procedure Act precluded the appeal and citing the *Brady* case. The *Costello* case was not cited. In *Harris*, the defendant Harris appealed from the trial court's denial of his motion to correct three allegedly illegal sentences. This Court granted the State's motion to dismiss the appeal, stating that the dismissal was without prejudice to filing an action under the Post Conviction Procedure Act.

The next change in direction, in favor of allowing an appeal, occurred in *State ex rel. Sonner v. Shearin*, 272 Md. 502, 325 A.2d 573 (1974). In that case, the trial judge suspended a portion of a five year sentence for using a handgun in the commission of a felony, despite a statutory prohibition that "no court shall suspend [the] mandatory minimum [five year] sentence prescribed" for such offense. Long after the final judgment in the case, the State filed a motion in the trial court to correct an illegal sentence. The trial court denied the motion; the State appealed, and this Court granted the State's

petition for a writ of certiorari. Relying, *inter alia,* upon opinions prior to the enactment of the Post Conviction Procedure Act, including *Roberts v. Warden, supra,* 206 Md. at 255, 111 A.2d at 601; *Duker v. State, supra,* 162 Md. at 549, 160 A. at 280, and *Dutton v. State, supra,* 123 Md. 373, 91 A. 417, this Court held that the trial judge's denial of the motion to correct an illegal sentence was appealable. *State ex rel. Sonner v. Shearin, supra,* 272 Md. at 520, 325 A.2d at 583. We reversed the judgment of the trial court.

The holding in *Shearin* was re-affirmed in *Coles v. State,* 290 Md. 296, 429 A.2d 1029 (1981). There, no timely appeal was taken from the judgment in the criminal case, but an appeal was taken from later action of the trial judge regarding the sentence. This Court, in an opinion by Judge Dudley Digges, held (290 Md. at 303, 429 A.2d at 1032):

"A trial court clearly has the authority and responsibility to correct an illegal sentence at any time, Md. Rule 774a; *Carter v. Warden,* 210 Md. 657, 124 A.2d 574 (1956), *cert. denied,* 352 U.S. 900 [77 S.Ct. 136, 1 L.Ed.2d 89] (1956), and the refusal to do so, no matter when the correction request is made, is appealable. *State ex rel. Sonner v. Shearin,* 272 Md. 502, 520, 325 A.2d 573, 583 (1974); *Roberts v. Warden,* 206 Md. 246, 255, 111 A.2d 597, 601 (1955)."

A few years later, in *Gerald v. State,* 299 Md. 138, 472 A.2d 977 (1984), the Court ordered the Court of Special Appeals to vacate a trial court's order denying a motion to correct an illegal sentence, holding that the trial court's denial was in error. With regard to the defendant's right to appeal, the *Gerald* opinion cited the *Shearin* and *Roberts* cases. *Gerald v. State, supra,* 299 Md. at 140, 472 A.2d at 978.

The zig-zagging resumed in *Valentine v. State, supra,* 305 Md. 108, 501 A.2d 847, where the defendant appealed from the trial court's denial of his motion to correct an illegal sentence, and the Court of Special Appeals dismissed the appeal. This Court granted the defendant's petition for a writ of certiorari and, in a 4 to 3 decision, affirmed the dismissal of the appeal. The Court returned to the holdings in *Harris v. State, supra,*

241 Md. 596, 217 A.2d 307; *Wilson v. State, supra,* 227 Md. 99, 175 A.2d 775; and *Brady v. State, supra,* 222 Md. 442, 160 A.2d 912. The majority adopted the reasoning of the *Wilson* case "that our rule pertaining to correction of illegal sentences [is] a statutory remedy within the meaning of the Post Conviction Procedure Act, now § 645A(e)." *Valentine,* 305 Md. at 120, 501 A.2d at 853. The majority in *Valentine* declined to follow the Court's most recent opinions on the subject, namely *Gerald, Coles,* and *Shearin.*[5]

The Court in *Randall Book Corp. v. State,* 316 Md. 315, 320–321, 558 A.2d 715, 718 (1989), declined to apply the *Valentine* holding to an appeal from the denial of a motion under Rule 4–345(a) to correct an allegedly illegal sentence consisting of fines; the Court resolved the appeal on its merits, affirming the trial court. The reason for not applying *Valentine* was that the appellant was a corporation which would have no remedy under the Post Conviction Procedure Act. On the other hand, in *Savoy v. State,* 336 Md. 355, 648 A.2d 683 (1994), the Court dismissed an appeal on the authority of the *Valentine* case.

The most recent case in this saga, and the case relied on by the Court of Special Appeals and by Kanaras, is *State v. Griffiths, supra,* 338 Md. at 496–497, 659 A.2d at 882. In *Griffiths,* the defendant was charged with, *inter alia,* the

---

**5.** The *Valentine* majority distinguished *Gerald* on the ground that the appealability "point" had not "occurred to … us" in *Gerald. Valentine,* 305 Md. at 120, 501 A.2d at 853. This statement is particularly puzzling in light of the *Gerald* opinion, 299 Md. at 140, 472 A.2d at 978, in which Judge Orth for the Court stated: "The trial judge, without a hearing, denied the motion to correct an illegal sentence. Gerald noted an appeal from the denial. *See State ex rel. Sonner v. Shearin,* 272 Md. 502, 520–526, 325 A.2d 573 (1974); *Roberts v. Warden,* 206 Md. 246, 255, 111 A.2d 597 (1955)."

The Court in *Valentine,* 305 Md. at 112, 501 A.2d at 849, disposed of *Coles* by calling the pertinent language "dictum." Nevertheless, it is difficult to comprehend how the appealability language in *Coles* is only dictum, since the defendant in that case had failed to take a timely appeal from the original judgment in the criminal case. Although the *Valentine* majority discussed the *Shearin* case, it is not clear how the majority purported to distinguish it.

greater offense of possessing cocaine with intent to distribute and the lesser included offense of possessing cocaine, both based upon the same act. The jury found him guilty of the lesser included offense but was hung as to the greater offense. The trial judge granted a mistrial on the greater offense, and the prosecution decided to re-try the defendant for the greater offense. The trial judge, instead of awaiting the outcome of the new trial before imposing any sentence, went ahead and imposed a sentence of imprisonment for the lesser included offense. The judgment on the lesser included offense, therefore, became final under Maryland law, and no appeal was taken. After the retrial, the defendant was convicted of the greater offense. The trial judge then imposed a separate sentence for the greater offense and took no action with regard to the earlier sentence for the lesser included offense. Both the Court of Special Appeals and this Court agreed that both sentences could not stand. The Court of Special Appeals reversed the judgment with regard to the greater offense, holding that the final judgment on the lesser included offense precluded the subsequent trial and sentence for the greater offense. A majority of this Court, however, took the position that the imposition of sentence for the greater offense rendered the earlier sentence for the lesser included offense illegal and that the trial judge should have exercised his power under Rule 4–345(a) to vacate the earlier sentence which had long been final. This Court went on to treat the appeal before it as being an appeal from the failure to correct under Rule 4–345(a) the "illegal" sentence, and ordered that the case be remanded to the trial court "for the purpose of vacating the sentence as to" the lesser included offense. 338 Md. at 497, 659 A.2d at 882. As authority for its exercise of appellate jurisdiction over the trial court's failure to correct the previously final "illegal" sentence, the Court in *Griffiths* relied upon *Coles v. State, supra,* 290 Md. 296, 429 A.2d 1029. The *Valentine* opinion, which had disapproved of *Coles,* was not cited by the majority in *Griffiths.*

The Court of Special Appeals in the case at bar, in holding that it could entertain an appeal from the trial court's refusal

to correct an allegedly illegal sentence, was entirely justified in relying upon *Griffiths,* as *Griffiths* is the most recent opinion of this Court concerning the issue. Not only is it the most recent case, but *Griffiths,* rather than *Valentine,* represents the better view as to appealability.[6]

■ The reason for the non-appealability holdings of *Valentine* and *Wilson* was the view that a motion to correct an illegal sentence, authorized by Rule 4–345(a), is a "statutory remed[y] ... for challenging the validity of incarceration under sentence of ... imprisonment" within the meaning of subsection (e) of the Post Conviction Procedure Act, Art. 27, § 645A(e). As pointed out in the dissenting opinion in *Valentine,* 305 Md. at 123, 501 A.2d at 854, however,

"a motion to correct an illegal sentence is not a 'statutory' remedy. Statutes are enacted by the General Assembly of Maryland. The Maryland Rules are adopted by the Court of Appeals. As the *Wilson* court noted, the Maryland Constitution does provide that rules adopted by the Court 'shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law.' Maryland Constitution, Art. IV, § 18(a). Nonetheless, the fact that the Maryland Rules have the force of law does not mean that a rule is a statute."

Furthermore, the language of the Post Conviction Procedure Act obviously refers to separate common law or statutory causes of action, such as habeas corpus or coram nobis actions which are separate civil actions. It is doubtful that this Court's rule-making authority would extend to the creation of a separate cause of action. In any event, there is no indication in the language or history of Rule 4–345 that the court intended to create a separate cause of action. While a motion under Rule 4–345 may be made at any time, it is part of the same criminal proceeding and not a wholly independent action.

---

6. The other issues which were dealt with in *Griffiths,* such as whether the earlier or the later sentence was the "illegal" sentence, are not involved in the case at bar.

The Rule simply grants the trial court limited continuing authority in the criminal case to revise the sentence.

In addition, subsection (e) of the Post Conviction Procedure Act refers to habeas corpus, coram nobis, or statutory actions "for challenging the validity of incarceration. . . ." A motion under Rule 4–345(a), however, is not specifically or exclusively designed to challenge the "validity" of incarceration. There may be illegalities in a sentence which have nothing to do with the validity of the incarceration. *See, e.g., State ex rel. Sonner v. Shearin, supra.*

Consequently, we hold that the language of the Post Conviction Procedure Act does not preclude an appeal from a circuit court's ruling under Rule 4–345. This Court's decisions in *Valentine v. State, supra,* 305 Md. 108, 501 A.2d 847; *Harris v. State, supra,* 241 Md. 596, 217 A.2d 307; *Burley v. State, supra,* 239 Md. 342, 211 A.2d 714; *Wilson v. State, supra,* 227 Md. 99, 175 A.2d 775; and *Brady v. State, supra,* 222 Md. 442, 160 A.2d 912, are overruled.

### III.

Although we agree with the Court of Special Appeals that the Circuit Court's order was appealable, we disagree with the intermediate appellate court's holding that Kanaras's sentence had become illegal.

Kanaras was convicted of first degree murder and sentenced to life imprisonment. This is a lawful sentence for the crime. *See* Art. 27, § 412. Under the law in effect in 1982, he was eligible for parole consideration after serving 15 years or the equivalent of 15 years considering the allowances for diminution of an inmate's term, and with the approval of the Governor. This law has not changed. Kanaras remains eligible for parole under the same terms and conditions.

Recently in *Lomax v. Warden, supra,* we held that the Governor's 1995 announcement of the guidelines, which he would use in determining whether he would approve the parole of inmates serving life sentences, did not constitute a change in the law within the meaning of the ex post facto

prohibition. We also pointed out in *Lomax* that the Governor's directive, that the Parole Commission should not recommend any parole of inmates serving life sentences, could not be given effect.

■ We further pointed out in *Lomax* that the Parole Commission is required to exercise the discretion vested in it by statute. It must continue to apply the statutory factors and make recommendations to the Governor of those inmates sentenced to life imprisonment who are eligible for parole and who, in the Commission's judgment, should be paroled. Moreover, the United States District Court for the District of Maryland has ordered the Parole Commission and the Commissioner of Correction to give inmates, who are sentenced to life imprisonment with eligibility for parole, parole consideration without requiring active participation in a work release or family leave program. *Knox v. Lanham,* 895 F.Supp. 750 (D.Md.1995), *aff'd,* 76 F.3d 377 (4th Cir.1996).

■ The prior acts of the Parole Commission and the Commissioner of Correction, which had the effect of denying inmates in Kanaras's position the parole consideration to which they were entitled under the statutory scheme, did not render illegal Kanaras's sentence. The illegality was in the conduct of the Parole Commission and the Commissioner of Correction; it did not inhere in Kanaras's sentence. Such illegality was subject to correction through a proper proceeding, such as a declaratory judgment action, a mandamus action, or a habeas corpus proceeding. Furthermore, it is our understanding that the illegal acts of those administrative officials have been corrected through appropriate proceedings. If not, Kanaras may certainly file such appropriate action. A motion under Rule 4–345(a) to correct an illegal sentence, however, was not an appropriate action.

Kanaras's sentence was legal when imposed and has continually remained legal.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT*

*WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR KENT COUNTY.*