883 A.2d 916

**Wesley Eugene BAKER**

v.

**STATE of Maryland.**

**No. 132, Sept. Term, 2004.**

Court of Appeals of Maryland.

Oct. 3, 2005.

128

Gary W. Christopher, First Asst. Federal Public Defender (Franklin W. Draper, Asst. Federal Public Defender, and William B. Purpura, Assigned Public Defender, on brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of MD, on brief), Baltimore, for appellee.

Michael Millemann; David Walsh-Little, Baltimore; Deanne M. Ottaviano, Lisa A. Estrada, Arent Fox, P.L.L.C., Washington, DC, brief of amicus curiae John Booth-El.

William J. Murphy, John J. Connolly, Murphy & Shaffer, L.L.C., Baltimore; John J. Gibbons, Lawrence S. Lustberg, Claudia Van Wyk, Gitanjali S. Gutierrez, Jonathan Hafetz, Megan Lewis, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., Newark, NJ, of counsel, brief of amicus curiae NAACP in support of appellant.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

HARRELL, Judge.

We consider here whether the Circuit Court for Harford County erred in denying a Motion to Correct an Illegal Sentence, without holding an evidentiary hearing, where the defendant relied principally on an empirical, government-sponsored study of Maryland's implementation between 1978 and 1999 of its death penalty statute, released publicly in early 2003 and published formally in 2004, to support an allegation of constitutional error in the 1992 imposition on him of the sentence of death. We hold that the Circuit Court neither erred as a matter of law nor abused its discretion; therefore, we affirm.

## I.

On 26 October 1992, Wesley Eugene Baker ("Baker") was

convicted by a jury in the Circuit Court for Harford County [1] of the first-degree murder of Jane Frances Tyson, robbery of Mrs. Tyson with a deadly weapon, and use of a handgun in the commission of a felony. The court,[2] four days later, sentenced Baker to death for the conviction of murder, as well as to forty years of incarceration—twenty years for robbery with a deadly weapon and a consecutive twenty years for the use of a handgun in the commission of a felony.

On direct appeal, this Court affirmed Baker's convictions and sentence of death. *Baker v. State*, 332 Md. 542, 632 A.2d 783 (1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994) (*"Baker I"*). Baker filed subsequently a number of petitions and motions in Maryland state courts. Their dispositions, none favorable to Baker, are explained in *Baker v. State*, 367 Md. 648, 790 A.2d 629 (2002), *cert. denied*, 535 U.S. 1050, 122 S.Ct. 1814, 152 L.Ed.2d 817 (2002) (*"Baker II"*) (affirming denial of a motion for new sentencing based on newly discovered evidence and denial of a motion to correct an illegal sentence based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000));[3] *Baker v. State*,

---

1. The underlying crimes occurred in Baltimore County. Thus, Baker was charged by indictment in the Circuit Court for Baltimore County on 24 June 1991. On Baker's motion, under Maryland Rule 4–254, the matter was removed to the Circuit Court for Harford County on 13 January 1992 for trial.

2. Baker elected to be sentenced by the trial judge, rather than the jury that heard the guilt/innocence phase of the proceedings.

3. Baker offered three arguments that relied upon the U.S. Supreme Court's holding in *Apprendi:*

   The first argument Baker makes is that "Maryland's death penalty statute is unconstitutional because it provides that a sentence of death may be imposed if the State proves only that the aggravating circumstances outweigh any mitigating circumstances by a preponderance of the evidence." Baker's second argument is that the rights identified in *Apprendi* should be applied retroactively to his sentence. Baker's third argument is that "as a matter of fundamental fairness, and pursuant to Article 24 of the Maryland Declaration of Rights, this Court should hold that no sentence of death in Maryland is permissible unless the finder of fact unanimously finds beyond a reasonable

377 Md. 567, 833 A.2d 1070 (2003), *cert. denied,* 541 U.S. 944, 124 S.Ct. 1673, 158 L.Ed.2d 370 (2004) *("Baker III")* (affirming denial of a motion to quash an illegal sentence and warrant of execution on grounds that the sentencing circuit court judge changed his county of residence for a period of time during his term and thus violated the judicial residency requirement of Article IV, Section 2 of the Maryland Constitution); *Baker v. State,* 383 Md. 550, 861 A.2d 48 (2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1931, 161 L.Ed.2d 775 (2005) *("Baker IV")* (affirming denial of a motion to correct an illegal sentence based upon a constitutional challenge, grounded on *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), to the preponderance of the evidence standard used to weigh aggravating circumstances against mitigating circumstances during the sentencing proceeding).

■■ Most recently and the instigation for the present appeal, Baker filed in the Circuit Court on 18 October 2004 a Motion to Correct an Illegal Sentence, a Motion to Reopen the Post–Conviction Proceeding, and a Petition for Post–Conviction Relief. Principally relying on a statistical study, commissioned by Governor Parris N. Glendening in September 2000, conducted by Professor Raymond Paternoster of the University of Maryland,[4] and published formally in the Spring of 2004,[5] Baker argued that his death sentence was imposed in a

---

doubt that the aggravating circumstances outweigh mitigating circumstances."
*Baker II,* 367 at 676, 790 A.2d at 645–46.

**4.** Dr. Paternoster is a professor in the Department of Criminology and Criminal Justice at the University of Maryland, College Park.

**5.** On 7 January 2003 the University of Maryland issued a press release announcing completion of the initial Study, including a brief summary of its findings and a website address where the Executive Summary and Final Report could be viewed and downloaded. A Supplemental Report, which focused on death eligible cases arising in Baltimore County and upon which Baker partially relied, was released to the public in February 2004. Findings from the Study were also released in a formal academic publication in the Spring of 2004, Raymond Paternoster et al., *Justice by Geography and Race: The Administration of the Death Penalty in Maryland, 1978–1999,* 4 MARGINS 1 (2004).

racially-biased (Baker is African–American and the victim of his crimes was Caucasian; Baker alleged that the death penalty was sought more frequently in such situations than in other racial combinations of accused and victim) and geographically-biased (Baker asserted that the State's Attorney for Baltimore County, who elected to pursue the death penalty and whose office prosecuted the case against him, sought such punishment in eligible cases more frequently than state's attorneys for other Maryland jurisdictions) manner. The Paternoster Study essentially examined the statewide implementation of Maryland's death sentence scheme between 1978 and 1999.[6] Baker argued the death penalty statute was applied to him unconstitutionally.[7] All motions were denied by the Circuit Court on 18 November 2004, as was Baker's subsequent Motion for Reconsideration. Although we denied Baker's application for leave to appeal the denial of his post-conviction initiatives, *Baker v. State*, 384 Md. 537, 865 A.2d 563 (2005),[8] we granted his application for leave to appeal the denial of the Motion to Correct an Illegal Sentence.

---

**6.** The Paternoster Study, although arguably of greater detail in its accumulation of data and analytical methodology, was not the first published study or report on this subject. *See, e.g.*, MARYLAND OFFICE OF THE PUBLIC DEFENDER, CAPITAL PUNISHMENT IN MARYLAND 1978–1987: A REPORT BY THE MARYLAND PUBLIC DEFENDER ON THE ADMINISTRATION OF CAPITAL PUNISHMENT (1987); THE REPORT OF THE GOVERNOR'S COMMISSION ON THE DEATH PENALTY: AN ANALYSIS OF CAPITAL PUNISHMENT IN MARYLAND 1978–1993 (1993); REPORT OF THE GOVERNOR'S TASK FORCE ON THE FAIR IMPOSITION OF THE DEATH PENALTY (1996); DAVID C. BALDUS & GEORGE WOODWORTH, RACE OF VICTIM AND RACE OF DEFENDANT DISPARITIES IN THE ADMINISTRATION OF MARYLAND'S CAPITAL CHARGING AND SENTENCING SYSTEM (1979–1996): PRELIMINARY FINDING (2001).

**7.** Baker argued that, under the U.S. Constitution, the Maryland death penalty statute violated his Fourteenth Amendment equal protection right. He contended also that the death penalty statute violated his Eighth Amendment right in that it allowed for the arbitrary application of the death penalty. In addition, Baker argued that his corollary rights under the Maryland Constitution were violated, specifically Article 16 (prohibiting cruel and unusual pains and penalties), Article 24 (embodying the concept of equal protection), and Article 25 (prohibiting cruel and unusual punishment) of the Maryland Declaration of Rights. As evidence of these violations, he relied on the Paternoster Study.

**8.** Section 7-104 of the Criminal Procedure Article, states that "[t]he court *may* reopen a postconviction proceeding that was previously

## II.

Under Maryland Rule 4–345(a), "[t]he court may correct an illegal sentence at any time." [9]  Generally such a motion is "not appropriate where the alleged illegality 'did not inhere in [the defendant's] sentence.'" *Evans v. State,* 382 Md. 248, 278, 855 A.2d 291, 309 (2004), *cert. denied,* 543 U.S. 1150, 125 S.Ct. 1325, 161 L.Ed.2d 113 (2005) (alteration in original) (quoting *State v. Kanaras,* 357 Md. 170, 185, 742 A.2d 508, 517 (1999)).  Consequently, a motion to correct an illegal sentence historically was entertained only where the alleged illegality was in the sentence itself or the sentence never should have been imposed. *See, e.g., Evans,* 382 Md. at 251, 855 A.2d at 292–93 (alleging an illegal sentence because the trial judge's application of an amendment to the death penalty statute, which became effective a few months after the murders, violated the *ex post facto* clauses of the U.S. and Maryland constitutions); *Jones v. State,* 384 Md. 669, 672, 866 A.2d 151, 152–53 (2005) (alleging an illegal sentence because the verdict was not announced orally in open court so as to allow the jury to be polled and hearkened to the verdict, and thus violated Maryland Rule 4–327); *State v. Griffiths,* 338 Md. 485, 496–97, 659 A.2d 876, 882 (1995) (alleging an illegal sentence because the imposition of a greater offense followed by the imposition of a sentence for a lesser included offense created a cumulative sentence prohibited by double jeopardy

---

concluded *if the court determines* that the action is in the interests of justice." Maryland Code (2001), Criminal Procedure Article, § 7–104 (emphasis added). As recently noted in *Gray v. State,* 388 Md. 366, 382, 879 A.2d 1064 (2005), § 7–104 "requires the court to exercise discretion when ruling on a petition to reopen a postconviction proceeding." Thus, "[w]e will only reverse a trial court's discretionary act if we find that the court abused its discretion." *Gray,* 388 Md. at 383, 879 A.2d 1064.

9.  Maryland Rule 4–345 states, in pertinent part:
   "**Rule 4–345.  Sentencing—Revisory power of court.**
      (a) Illegal sentence.  The court may correct an illegal sentence at any time."

protections); *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949, 951 (1985) (alleging an illegal sentence because "the imposition of restitution as a condition of probation d[id] not authorize a trial court to order restitution to a victim of a crime of which [the defendant] was not convicted"); *Roberts v. Warden of Maryland Penitentiary,* 206 Md. 246, 249, 111 A.2d 597, 598 (1955) (alleging an illegal sentence on two convictions of assault because the sentence exceeded that which was permitted by law); [10] *Bond v. State,* 78 Md. 523, 524, 28 A. 407, 407 (1894) (alleging an illegal sentence because the two sections of the Maryland Code, under which the sentence was imposed, were "repugnant and totally inconsistent, and cannot therefore be enforced").[11] Thus, where the sentence or sanction was itself lawful, a Rule 4–345(a) motion was not an appropriate vehicle to challenge the legality of a sentence. *Evans,* 382 Md. at 279, 855 A.2d at 309.

We recently recognized an exception in capital sentencing cases to these historic principles. Where a decision in an unrelated case rendered by the U.S. Supreme Court, following imposition of the death sentence in a given Maryland case, supplied a new judicial interpretation of a constitutional provision that might support an argument that an alleged error of constitutional dimension may have contributed to the imposition of the death sentence in that given case, we indicated that a motion to correct an illegal sentence was a proper vehicle to raise the new constitutional argument. In *Oken v. State,* 378 Md. 179, 184–85, 835 A.2d 1105, 1108 (2003), *cert. denied,* 541 U.S. 1017, 124 S.Ct. 2084, 158 L.Ed.2d 632 (2004), Oken raised

---

**10.** In *Roberts,* the motion to correct an illegal sentence was raised under then prevailing Rule 10(a) of the Criminal Rules of Practice and Procedure, which provided: "The court may correct an illegal sentence at any time." While the substantive content of this provision has been embodied in various numbered Rules over time, for the purposes of our current analysis there is substantively no difference with its present day counterpart—Maryland Rule 4–345(a), which was adopted as such in 1984.

**11.** No rule governed motions to correct an illegal sentence when *Bond* was decided; however, the concept of an illegal sentence was recognized in common law.

a constitutional challenge to the Maryland death penalty statute in a Rule 4–345(a) motion to correct an illegal sentence. He relied on two U.S. Supreme Court opinions [12] decided after his 1991 Maryland death sentence proceeding. *Oken,* 378 Md. at 185–86, 835 A.2d at 1108–09. This Court reviewed the merits of Oken's constitutional claims, concluding that, despite the new Supreme Court cases, the Maryland death penalty statute was not unconstitutional on its face where the jury or judge may conclude by a preponderance of the evidence that the aggravating factors outweigh any mitigating factors. *Oken,* 378 Md. at 185–86, 269, 835 A.2d at 1108, 1157–58. That *Oken* addressed the constitutional issues raised in a Rule 4–345(a) context was noted subsequently by the Court in *Evans* and summarized as follows:

> The defendant Oken argued, relying on recent Supreme Court cases, that a constitutional error in the capital sentencing proceeding contributed to the death sentence. Section 2–303(i) of the Maryland death penalty statute provides that the trier of facts "shall determine by *a preponderance of the evidence* whether the aggravating circumstances under subsection (g) of this section outweigh the mitigating circumstances." (Emphasis added). In *Oken,* the case was presented to the sentencing jury under this "preponderance of the evidence" standard. The defendant Oken had raised no objection to this in the sentencing proceeding or in a prior post conviction proceeding. In the Rule 4–345 proceeding, however, Oken argued that the preponderance of the evidence standard violated due process and that a "beyond a reasonable doubt" standard was constitutionally required. This Court, in the Rule 4–345 proceeding, re-

---

12. Oken relied on *Ring v. Arizona,* 536 U.S. at 589, 122 S.Ct. at 2432, 153 L.Ed.2d at 564 ("Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."), and *Apprendi v. New Jersey,* 530 U.S. at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

solved the merits of the constitutional issue, with the majority holding that application of the "preponderance of the evidence" standard was constitutional. *See also Oken v. State,* 367 Md. 191, 195, 786 A.2d 691, 693 (2001), *cert. denied,* 535 U.S. 1074, 122 S.Ct. 1953, 152 L.Ed.2d 855 (2002), where the Court decided the merits of a similar challenge by the defendant Oken.

*Evans,* 382 Md. at 279–80, 855 A.2d at 309 (emphasis in original).

In *Evans, supra,* after summarizing the general rules historically governing the proper purpose of a Rule 4–345(a) motion and the circumstances for applying the capital sentencing exception implied in *Oken,* we stated "this Court has appeared to recognize an exception to the above-summarized principles where, in a capital sentencing proceeding, an alleged error of constitutional dimension may have contributed to the death sentence, at least where the allegation of error is partly based upon a decision of the United States Supreme Court or of this Court rendered after the defendant's capital sentencing proceeding." *Evans,* 382 Md. at 279, 855 A.2d at 309. Before considering the merits of Evans' constitutional claim,[13] we assessed the availability of a Rule 4–345(a) motion to raise such a challenge:

Evans, like Oken, claims that a provision of the Maryland death penalty statute was unconstitutionally applied to him at his capital sentencing proceeding and that this alleged error may have resulted in the death sentence. Also, as in the *Oken* cases, Evans chiefly relies upon a United States Supreme Court opinion rendered after his 1992 capital sentencing proceeding, namely *Carmell v. Texas, supra,* 529

---

**13.** Relying primarily on *Carmell v. Texas,* 529 U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) (holding that the *Ex Post Facto* Clause of the U.S. Constitution precluded application of a statute to offenses committed before its effective date), Evans argued that "the jury instruction based on . . . the Acts of 1983, rather than an instruction based on the statute as it read prior to the 1983 amendment, was in violation of the *ex post facto clauses* of the federal and state constitutions," as "it imposed . . . a new and more burdensome burden of proof." *Evans,* 382 at 277–78, 283, 855 A.2d at 308, 311.

U.S. 513, 120 S.Ct. 1620, 146 L.Ed.2d 577 [(2000)]. With regard to the availability of a proceeding under Rule 4–345(a), we perceive no significant differences between the *Oken* cases and the present case. Consequently, we shall decide the merits of Evans's *ex post facto* argument.

*Evans,* 382 Md. at 280, 855 A.2d at 309–10. Thus, because Evans relied on a U.S. Supreme Court opinion deciding a novel constitutional question of arguable relevance decided after the imposition of his capital sentence, a Rule 4–345(a) motion was deemed an appropriate vehicle available to him to mount his arguments. *Id.* This exception in capital sentencing cases to the general limitations as to the proper grounds to raise in a motion to correct an illegal sentence, as applied in *Oken* and followed in *Evans,* thus far only has been recognized where the basis of the constitutional argument in support of the alleged error was based on a decision or decisions of the U.S. Supreme Court.

## III.

■ Baker's Motion to Correct an Illegal Sentence under review in the present case fails to offer grounds cognizable under either pre-*Oken* general principles or the post-*Oken* constitutional decision exception. Both the U.S. Supreme Court and this Court have confirmed the constitutionality under the Eighth and Fourteenth Amendments of the punishment of death, including Maryland's death penalty statute specifically. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 168–69, 96 S.Ct. 2909, 2922–23, 49 L.Ed.2d 859, 871–72 (1976); *Baker II,* 367 Md. at 676, 790 A.2d at 646 ("We have held on numerous occasions that the Maryland death penalty statute is constitutional. . . ."). In addition, there is no direct and specific evidence in this record to suggest that Baker's death sentence was surrounded by impropriety of any kind. *See Baker I,* 332 Md. at 571, 632 A.2d at 797 ("We also conclude that Baker's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor."). Accordingly, Baker's death sentence is itself lawful and was imposed validly, and thus is not illegal under the pre-*Oken*

general analytical principles governing motions brought under Rule 4–345(a).

■ Moreover, the grounds for Baker's motion in the present case do not fit within the capital sentencing exception for a Rule 4–345(a) motion. Unlike in *Oken* and *Evans,* Baker does not rely principally upon a U.S. Supreme Court decision, or even one of this Court, decided after his 1992 sentencing proceeding, rendering a new constitutional interpretation. Rather, Baker argues that the Paternoster Study, addressing the implementation between 1978 and 1999 of Maryland's death penalty statute (available only after Baker's trial, appellate, prior post-judgment motions, and post-conviction proceedings), demonstrates conclusively (or at least makes a prima facie showing of) a substantial risk that race and geography (i.e., the jurisdiction where the crime was committed and thus the local prosecutor's office that both exercised discretion whether to seek the death penalty and tried the case) influenced how the death penalty process unfolded generally in Maryland and specifically in his case.[14] Therefore, because Baker relies almost exclusively upon the Paternoster Study, rather than a "new" judicial decision bearing on relevant constitutional law, to establish the argued illegality in his sentence, his arguments do not fall within the exception recognized in *Oken* and *Evans.*[15]

---

**14.** Although for statistical purposes Baker's sentencing was included in the sweep of the Paternoster Study, there concededly is no conclusion drawn there that Baker's sentence specifically was influenced by any impermissible racial or geographical factors. Additionally, Dr. Paternoster stated in his testimony before the Senate Judicial Proceedings Committee on 9 January 2003, shortly after the initial Study was released to the public: "I would like to make it especially clear that these results [of the Study] do not mean that anyone is behaving in a racially discriminatory manner because I think there are other explanations for that."

**15.** Moreover, the cognizability of Baker's Rule 4–345(a) arguments here is further weakened by *Randall Book Corporation v. State,* 316 Md. 315, 558 A.2d 715 (1989). In *Randall Book Corporation,* this Court considered a defendant's claim, under a motion to correct an illegal sentence, that the sentencing judge was motivated by impermissible considerations. *Randall Book Corp.,* 316 Md. at 322, 558 A.2d at 719. We

As a result, Baker urges this Court to expand further the grounds deemed appropriate to trigger Rule 4–345(a) analysis to include an arguably relevant empirical study, commissioned by a branch of State government and published after the sentencing in his case, the results or conclusions of which assertedly support an allegation of constitutional error contributing to the imposition of his death sentence. We shall not expand further the presently recognized grounds upon which relief may be considered under Rule 4–345(a).

A judicial decision is defined as a "judicial ... *determination* after consideration of the facts *and the law.*" BLACK'S LAW DICTIONARY 436 (8th ed. 2004) (emphasis added). In contrast, a report is a "formal oral or written *presentation of facts* ...." BLACK'S LAW DICTIONARY at 1326 (emphasis added). Both may have their place in the processes of the Executive, Legislative, and Judicial branches of State government.[16] Regarding, however, Maryland Rule 4–345, plainly

---

noted that this examination was appropriate on direct appeal. *Randall Book Corp.*, 316 Md. at 323, 558 A.2d at 719. Yet, we concluded also that "while improper motivation may justify vacation of the sentence, it does not render the sentence illegal within the meaning of Rule 4-345. Appellant did not raise this contention on direct appeal and may not do so here." *Id.*

**16.** The Paternoster Study was commissioned by Governor Glendening in 2000 through a Contractual Services Appropriation as a Survey Commission. The budgetary description for the Study stated that the funds were for "a study of racial disparity in administration of the death penalty." Senate Bill (S.B.) 150–2000. In the immediately previous legislative session, House Bill (H.B.) 538–1999, which proposed that the same type of study be undertaken, failed when the House Judiciary Committee gave it an unfavorable report.

The published version of the Paternoster Study states that its general objective is "to *estimate the effect* that race and geography has ... [during] four decision points" in the capital sentencing process. RAYMOND PATERNOSTER, AN EMPIRICAL ANALYSIS OF MARYLAND'S DEATH SENTENCING SYSTEM WITH RESPECT TO THE INFLUENCE OF RACE AND LEGAL JURISDICTION, FINAL REPORT 5 (2004) [hereinafter FINAL REPORT] (emphasis added); *see also* FINAL REPORT at 5–6 (noting that the Study is "a detailed *presentation of our results*—what we found with respect to the administration of the death penalty") (emphasis added). When Dr. Paternoster testified before the Senate Judicial Proceedings Committee on 9 January 2003 and was asked to comment about the impact the Study may have on the

entitled: "Revisory power of court," the authority vested there "simply grants the trial court limited continuing authority in the criminal case to revise the sentence." *Kanaras,* 357 Md. at 184, 742 A.2d at 516. In a capital sentencing context, a motion to correct an illegal sentence enables the court to re-evaluate the initial sentence to ensure that it is not illegal, as that term has been defined in our cases considering Maryland Rule 4–345(a), its predecessors, and the common law. It is not an opportunity for the parties to litigate or re-litigate factual issues, but rather a vehicle to demonstrate, particularly in the case of the constitutional decision exception, that newly declared common law causes a penalty that was legal when administered now to be illegal as a matter of constitutional law.[17]

---

constitutionality of the death penalty, he replied: "I can't simply because I am not a lawyer … I'm a social scientist and I'm a criminologist and I looked at this data and I found patterns and I'm reporting those patterns."

Following release of the Study, the Legislature appears to have failed to achieve a majority consensus whether the death penalty statutory scheme required attention in the face of the Study. The following bills regarding the death penalty statute all failed of enactment. H.B. 16–2003 and S.B. 12–2003 would have established a moratorium on the death penalty in order to allow the Legislature to consider the Paternoster Study and make recommendations based on the Study. Both bills explicitly mentioned the Study in their respective Preambles as a basis for the intended moratorium. S.B. 544–2003 and H.B. 521–2004 would have repealed the death penalty (the Fiscal and Policy Note for each bill noted the Study and its findings). S.B. 744–2004, which called for the establishment of the Maryland Commission on Capital Punishment, explicitly required that the Commission review the Study. H.B. 665–2003 would have established a task force to study the need for prosecutorial guidelines and procedures to govern death penalty decisions. The Fiscal and Policy Note for that bill exclusively relied on the Study and its findings as support for the bill. S.B. 350–2003 would have required this Court to conduct a proportionality review in cases that imposed a sentence of death. The Fiscal and Policy Note for the bill noted the Study and its findings. Finally, S.B. 572–2003 would have excluded consideration of the death penalty in circumstances of felony murder and removed felony murder from the list of aggravating circumstances when considering the sentence of death. The Fiscal and Policy Note for the bill referred to the Study.

17.  Whether a general statistical study, published after a capital sentencing, ever may demonstrate constitutional error in a specific death

JUDGMENT OF THE CIRCUIT COURT FOR HAR-
FORD COUNTY AFFIRMED.  COSTS TO BE PAID BY
APPELLANT.

---

sentence is a question we need not address.  *But see McCleskey v. Kemp,*
481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (concluding that a
statistical study did not establish sufficiently that Georgia's capital
sentencing system violated either the Equal Protection Clause or the
Eighth Amendment).