81 A.3d 560

**Joseph A. CARLINI**

v.

**STATE of Maryland.**

**No. 1000, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Dec. 18, 2013.

416

418

Martha Gillespie (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Ryan R. Dietrich (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: WOODWARD, HOTTEN, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), J.

What is an illegal sentence? That all depends upon what one means by "an illegal sentence." There are countless illegal sentences in the simple sense. They are sentences that may readily be reversed, vacated, corrected or modified on direct appeal, or even on limited post-conviction review, for a wide variety of procedural glitches and missteps in the sentencing process. Challenges to such venial illegalities, however, are vulnerable to such common pleading infirmities as non-preservation and limitations. There is a point, after all, beyond which we decline to revisit modest infractions. There are, by contrast, illegal sentences in the pluperfect sense. Such illegal sentences are subject to open-ended collateral review. Although both phenomena may casually be referred to as illegal sentences, there is a critically dispositive difference between a procedurally illegal sentencing process and an

inherently illegal sentence itself.[1]  It is only the latter that is grist for the mill of Maryland Rule 4–345(a):

> (a) *Illegal sentence.*  The court may correct an illegal sentence at any time.

### The Present Case

On September 2, 2008, the appellant, Joseph A. Carlini, entered a guilty plea before Judge William J. Rowan, III, in the Circuit Court for Montgomery County to charges of 1) a felony theft scheme, 2) fraudulent practices in the sale of securities, and 3) acting as a broker without being registered by the State.  The actual sentencing, after a series of post-ponements, was deferred until November 26, 2008.

The sentence that concerns us was on the first count, charging a scheme of felony theft.  Judge Rowan sentenced the appellant on that count to a term of ten years imprison-ment with all but four years suspended, to be followed by five years of supervised probation.  The appellant was also or-dered to pay restitution to 41 victims of his theft in amounts set forth in the State's "Memorandum Regarding Restitution."

The appellant was released from jail on August 20, 2009.  Over the course of the next nine months, he paid $9,106

---

1.  The two illegalities must not be conflated.  It was of this linguistic problem that this Court spoke in *Matthews v. State,* 197 Md.App. 365, 367, 13 A.3d 834 (2011), *rev'd on other grounds,* 424 Md. 503, 36 A.3d 499 (2012):

> What seems at first to be a legal problem frequently turns out to be a linguistic or a semantic problem.  On this appeal, we come face to face with *the enigma that an illegal sentence is not always an illegal sentence.*  We do not mean this as doubletalk.  In the context of direct appellate review, *there are a wide variety of reasons why a sentence,* or a sentencing procedure, *may be so seriously flawed as to give rise to the appellate reversal* or vacating of the sentence.  In this context, *such flaws* are, and *are regularly referred to as, illegal sentences.*  There are, however, procedural rules regulating the form that challenges to such sentences may take and imposing strict limitations on when such challenges may be made.  *There is also,* by dramatic contrast, *a very different context in which a sentence may be challenged at any time,* subject to no filing deadline of any sort.

(Emphasis supplied).

toward his restitution obligation but was nonetheless in arrears in the amount of $5,630.82. On May 25, 2010, he appeared in circuit court on a charge of having violated his probation because of that arrearage. The court found the appellant to be in violation of probation, but acceded to defense counsel's request that the imposition of any sentence be stayed to allow him to become current with his restitution obligation. The court set an interim hearing for July 27, 2010. At the July 27 hearing, the State reported that the appellant, through a lump sum payment of $19,000 on July 16, had become current on his restitution obligation. The court agreed that an imposition of sentence for a probation violation was not warranted at that time and set another hearing for December 3, 2010. At the December 3 hearing, however, the State brought out that the appellant had made no payments toward restitution since July and showed no signs of being able to do so in the foreseeable future. Judge Rowan ordered that the six years of suspended incarceration be served. At no time during all of those hearings did the appellant suggest that the restitution obligation was in any way in violation of his plea agreement.

It was on May 21, 2012, that the appellant claimed for the first time that the restitution order was an illegal sentence because it was a sanction beyond the scope of his plea agreement. That Motion to Correct an Illegal Sentence was denied, without a hearing, by Judge Michael J. Algeo on June 13, 2012. It is from that denial that the appellant has taken this appeal.

### The Contention

The appellant's single contention focuses exclusively on the hearing of September 2, 2008, at which the appellant entered his guilty pleas. He argues that, as defense counsel and the prosecutor explained to Judge Rowan the terms of their plea agreement, the only criminal sanction expressly mentioned was a term of imprisonment. The agreement, ultimately accepted by Judge Rowan, did not place any upper limit on the term of imprisonment that might be imposed but did place

a "cap of not more than four years on executed incarceration." Any distinction between the formal term of imprisonment and the unsuspended or "hard time" to be served is not a factor in this case.

The contention, rather, is that imprisonment was the only sanction expressly mentioned at the guilty plea hearing and that any other sanction, such as a fine or restitution or some other probationary condition, does not fit under that explicit sentencing cap and would render the sentence illegal. The argument is that anything other than literal imprisonment is *ipso facto* excessive. The appellant specifically contends that the orders of restitution exceeded the sentencing cap and are, therefore, illegal under Rule 4–345(a). What the appellant seeks is to have the restitution orders eliminated from his sentence.

### Rule 4–345(a): What It Is And What It Is Not

Although its identifying tags have regularly been updated, the substance of Rule 4–345(a) has long been with us and has been unwavering. The Rules of Criminal Procedure were completely recodified by an Order of the Court of Appeals dated April 6, 1984 and effective as of July 1, 1984. What is now Rule 4–345(a) had theretofore been codified, verbatim, as Maryland Rule 774(a). That provision, prior to an earlier revision adopted on January 31, 1977 and effective as of July 1, 1977, had, in turn, been codified as Maryland Rule 764(a). Before a yet earlier rewriting of the Maryland Rules of Procedure, adopted on September 15, 1961 and effective as of January 1, 1962, the provision, in precisely the same language, had been Rule 744(a). Before 1962, that same unchanged provision had been Rule 10(a) of the Criminal Rules of Practice and Procedure. We have not looked further back.[2] Rule 4–345(a) and its predecessors have produced a sprawl of haphazard caselaw that needs some organization.

---

2. The provision is presumptively post-Magna Charta.

## A. What Rule 4–345(a) Is

■ Although an illegal sentence may, of course, be challenged on direct appeal, some illegal sentences (as distinguished from all) may be challenged long after the time for noting an appeal has run out and notwithstanding the fact that the defendant 1) failed to object to the sentence at the trial level, 2) purportedly consented to the sentence, or 3) failed to challenge the sentence by way of direct appeal. This plenary indulgence was noted by Judge Eldridge for the Court of Appeals in *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949 (1985):

> We hold that when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even if no objection was made in the trial court. Such review and correction of an illegal sentence is especially appropriate in light of the fact that Rule 4–345(a), formerly Rule 774 a, provides that *"[t]he court may correct an illegal sentence at any time." Thus, a defendant who fails to object to the imposition of an illegal sentence does not waive forever his right to challenge that sentence.*

(Emphasis supplied).

■ *State v. Griffiths,* 338 Md. 485, 496, 659 A.2d 876 (1995), commented on Rule 4–345(a)'s ability thus to trump the normally foreclosing effect of finality:

> *This Rule creates a limited exception to the general rule of finality,* and sanctions a method of opening a judgment otherwise final and beyond the reach of the court.

(Emphasis supplied). See also *Johnson v. State,* 427 Md. 356, 367, 47 A.3d 1002 (2012).

In *Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506 (2007), Judge Wilner commented on the procedurally uninhibited nature of a Rule 4–345(a) challenge:

> A criminal sentence may be deficient and subject to being vacated on appeal for a variety of reasons. Through its adoption of what is now Maryland Rule 4–345 and through its decisional jurisprudence, this Court has created two

categories of deficiency and has treated those categories differently. *Maryland Rule 4–345(a) permits a court to "correct an illegal sentence at any time." If a sentence is "illegal" within the meaning of that section of the rule, the defendant may file a motion in the trial court to "correct" it, notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal.*

(Emphasis supplied).

Rule 4–345(a) is virtually identical to an earlier version of Federal Rule of Criminal Procedure 35. *Johnson v. State,* 274 Md. 29, 39, 333 A.2d 37 (1975) ("Rule 35 of the Federal Rules of Criminal Procedure . . . is virtually identical to the provisions of Maryland Rule 764a."). Rule 35(a) provided, "The court may correct an illegal sentence at any time." [3] Although Federal Rule 35, as it then was phrased, is not constitutionally binding, the cases interpreting it are persuasive authority. In *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), the Supreme Court was dealing with a situation in which a prisoner at his sentencing was denied the opportunity, by way of allocution, to make a statement on his own behalf. In distinguishing an inherently illegal sentence from a proce-

---

**3.** Rule 35(a) was amended as a result of Public Law 98–473, 98 Stat. 1837 (1984), effective November 1, 1987, which vested most authority to correct illegal federal sentences in the federal appellate courts. See 18 U.S.C. §§ 3551, 3557, 3742. Section 3742(a) provides, in part:

(a) *Appeal by a defendant.*—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—
(1) was imposed in violation of law[.]

The federal appellate court then must determine "whether the sentence . . . was imposed in violation of law," § 3742(e)(1), and,

[i]f the court of appeals determines that . . . the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate.

§ 3742(f)(1).

dural illegality occurring in the course of the sentencing, the Court held, 368 U.S. at 430, 82 S.Ct. 468:

> It is suggested that ... we may· consider it [the motion before the Court] as a motion to correct an illegal sentence under Rule 35 of the Federal Rules of Criminal Procedure. This is correct. But, as the Rule's language and history make clear, *the narrow function of Rule 35 is to permit correction at any time of an illegal sentence, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence. The sentence in this case was not illegal.* The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect.

(Emphasis supplied). See *Hoile v. State,* 404 Md. 591, 623, 948 A.2d 30 (2008) ("*Hill* has been discussed with approval in several reported Maryland appellate decisions."); *State v. Wilkins,* 393 Md. 269, 275, 900 A.2d 765 (2006); *Randall Book Corp. v. State,* 316 Md. 315, 321–22, 558 A.2d 715 (1989).

██ If a motion is made pursuant to Rule 4–345(a) to correct an illegal sentence, a denial of the motion may be immediately appealed. *Chaney v. State, supra,* was very clear:

> The sentence may be attacked on direct appeal, but it also may be challenged collaterally and belatedly [per Rule 4–345(a) ], and, *if the trial court denies relief in response to such a challenge, the defendant may appeal from that denial and obtain relief in an appellate court.*

397 Md. at 466, 918 A.2d 506 (emphasis supplied). Rule 4–345(a), moreover, does not preclude action by the trial court on its own initiative. *State v. Griffiths,* 338 Md. 485, 496, 659 A.2d 876 (1995).

**B. What Rule 4–345(a) Is Not**

██ The flip-side of Rule 4–345(a) is that its exemption from the normal procedural qualifiers is a narrow one, available only for a limited species of sentence illegalities. The

illegality must actually inhere in the sentence itself and must not be a procedural illegality or trial error antecedent to the imposition of sentence. *Chaney v. State*, 397 Md. at 466, 918 A.2d 506, made this point most emphatically:

> *The scope of this privilege*, allowing collateral and belated attacks on the sentence and excluding waiver as a bar to relief, *is narrow*, however. *We have consistently defined this category of "illegal sentence" as limited to those situations in which the illegality inheres in the sentence itself; i.e.*, there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed *and, for either reason, is intrinsically and substantively unlawful.*

(Emphasis supplied).

*Johnson v. State*, 427 Md. 356, 367, 47 A.3d 1002 (2012), also spoke to Rule 4–345(a)'s narrow window of availability:

> To constitute an illegal sentence under Rule 4–345(a), *"the illegality must inhere in the sentence itself, rather than stem from trial court error during the sentencing proceeding."* Accordingly, "we have denied relief pursuant to Rule 4–345(a) because the sentences imposed were *not inherently illegal, despite some form of error or alleged injustice."*

(Emphasis supplied).

The same narrow scope of Rule 4–345(a) was stressed by *Tshiwala v. State*, 424 Md. 612, 619, 37 A.3d 308 (2012):

> *[W]here the sentence imposed is not inherently illegal, and where the matter complained of is a procedural error, the complaint does not concern an illegal sentence for purposes of Rule 4–345(a).* A sentence does not become "an illegal sentence because of some arguable procedural flaw in the sentencing procedure." . . .

These principles, delineating the narrow scope of a Rule 4–345(a) motion to correct an illegal sentence, have been recognized and applied in a multitude of this Court's opinions. . . . " . . . *We have consistently defined this category of*

*'illegal sentence' as limited to those situations in which the illegality inheres in the sentence itself[.]"*

(Emphasis supplied).

In *Matthews v. State*, 197 Md.App. 365, 375, 13 A.3d 834 (2011), *rev'd on other grounds*, 424 Md. 503, 36 A.3d 499 (2012), this Court as well took note of the Rule's austerely limited coverage:

> Emerging from [a] survey of a quarter of a century of Maryland caselaw is the overarching principle that *the values of finality and cloture still abide. Rule 4–345(a) has been consistently interpreted to be a narrow window* that permits a trial judge to correct at any time a sentence that is *obviously and facially illegal* in the sense that it is a sentence that the court had never been statutorily authorized to impose. *It is not,* on the other hand, *some unlimited "Reopen, Sesame," licensing the court to revisit and to relitigate issues that have long since become faits accompli.*

(Emphasis supplied).

## The Plea Bargain Cases And Sentencing Caps

█ The classic illegal sentence for purposes of Rule 4–345(a) was one that exceeded the legislatively imposed statutory maximum. The Legislature set the sentencing cap and that was it. In the 15–month period between October of 2010 and January of 2012, however, the Court of Appeals issued a series of three opinions in which it significantly expanded the category of illegal sentences by expanding the notion of who or what might impose the sentencing cap: *Cuffley v. State*, 416 Md. 568, 7 A.3d 557 (2010); *Baines v. State*, 416 Md. 604, 7 A.3d 578 (2010); and *Matthews v. State*, 424 Md. 503, 36 A.3d 499 (2012).[4]

---

4. Although they were not Rule 4–345(a) cases, there were strong intimations in *Dotson v. State*, 321 Md. 515, 583 A.2d 710 (1991); *Tweedy v. State*, 380 Md. 475, 845 A.2d 1215 (2004); and *Solorzano v. State*, 397 Md. 661, 919 A.2d 652 (2007), that a plea agreement could produce a legally binding sentencing cap. The intimations turned out to be right on target.

■ In *Cuffley,* 416 Md. at 586, 7 A.3d 557 Judge *(now* Chief Judge) Barbera wrote for the Court in holding that when the trial judge accepts a plea agreement entered into by a defendant and the State and agrees to be bound by its terms, any sentence then imposed in excess of the sentencing cap thus agreed upon is an illegal sentence within the contemplation of Rule 4–345(a).

We therefore hold that, regardless of whether the sentencing term is clear or ambiguous, *the court breached the agreement by imposing a sentence that exceeded a total of eight years' incarceration. The sentence is illegal and,* upon Petitioner's motion, *the Circuit Court should have corrected it* to conform to a sentence for which Petitioner bargained and upon which he relied in pleading guilty. (Emphasis supplied).

The sentencing cap, which the sentence may not exceed lest it be rendered illegal, is that set by the plea agreement by which the judge has agreed to be bound. For purposes of Rule 4–345(a), this new variety of sentencing cap is the functional equivalent of the traditional statutory sentencing cap set by the Legislature. In *Dotson v. State,* 321 Md. 515, 522–23, 583 A.2d 710 (1991), Judge Orth had explained that a statutory sentencing cap and a sentencing cap set by a plea agreement are, indeed, functional equivalents:

> *Generally, the maximum sentence allowable by law is that designated by the Legislature* .... The convictions here, however, were obtained by guilty pleas tendered under a plea agreement. The aspect of the agreement which motivated the pleas was that ... the judge would impose a sentence not to exceed a total of 15 years.... [T]he judge found the pleas to be acceptable, convicted Dotson thereunder, and honored the agreement as to the punishment. *When the judge accepted the pleas, the agreement as to punishment came into full bloom; it stood approved by the judge. Thereafter, the agreement was inviolate, and the judge was required under the dictate of Rule 4–243(c)(3) to embody in the judgment the agreed sentence* .... It follows, that, *inasmuch as 15 years was the*

*harshest sentence that could be imposed under the circumstances, 15 years stood as the maximum allowable by law.*
(Emphasis supplied). *Dotson's* clear holding was: "[T]he plea agreement fixed the maximum sentence allowable by law." 321 Md. at 524, 583 A.2d 710. A sentence in excess of either cap is fatally illegal. *Dotson* is now a part of Rule 4–345(a) law.

In *Cuffley*, 416 Md. at 573–74, 7 A.3d 557 the plea bargain was for "a sentence within the guidelines," which counsel had agreed was between "four to eight years." The trial judge agreed to be bound by those terms: "The plea agreement, as I understand it, is that I will impose a sentence somewhere within the guidelines. The guidelines in this case are four to eight years." The court subsequently sentenced the defendant to "15 years at the Department of Correction, all but six years suspended." The trial judge, the prosecutor, and even defense counsel reasonably believed that the guidelines referred only to unsuspended "hard time" and that the unsuspended term of six years, therefore, fell within the agreed-upon range of four to eight years. The Court of Appeals, however, agreed with the defendant that the sentencing cap of eight years referred to the total sentence of suspended and unsuspended time alike because that was a reasonable assumption for the defendant to have made. The actual sentence imposed in *Cuffley* was in excess of the sentencing cap agreed to by the defendant; was a breach of the agreement; and was, therefore, an illegal sentence under Rule 4–345(a).

In *Baines* the circumstances were virtually indistinguishable from those in *Cuffley*. On two charges of armed robbery, the defendant entered guilty pleas under an agreement to be sentenced "within the guidelines." The overall guidelines range for the two offenses was "seven to thirteen years." The court "accepted the plea and agreed just to commit myself within the Guidelines." 416 Md. at 607, 7 A.3d 578. The court sentenced the defendant "on the first count of armed robbery to 20 years, all but 7 years suspended, and on the second count of armed robbery to a consecutive 20 years, all but 6 years suspended." *Id.* The combined sentences of six

years plus seven years of unsuspended "hard time" did not exceed the guidelines sentencing cap of 13 years. The Court of Appeals concluded, however, that the defendant's reasonable understanding of the plea bargain was that his total sentence, and not simply the actual time to be served, would not exceed thirteen years.

> We believe it plain from the record of the plea proceeding that Petitioner reasonably understood the plea agreement to call for a total sentence of no more than thirteen years.

416 Md. at 620, 7 A.3d 578. Accordingly, the Court held that the combined sentence was a breach of the plea agreement and was, therefore, an illegal sentence.

> [W]e hold that the sentence was in breach of the plea agreement, because *the record of the plea proceeding reflects that Petitioner reasonably understood that the court would not impose a total sentence exceeding thirteen years, including both non-suspended and suspended time.*

416 Md. at 607, 7 A.3d 578 (emphasis supplied).

In *Matthews,* the defendant again did not understand that the sentencing cap agreed upon in the plea bargain applied only to unsuspended time. The trial court applied the cap only to the unsuspended part of the sentence and not to the entire sentence. In determining precisely what sentencing cap had been agreed upon, the Court of Appeals gave the benefit of the doubt to the defendant's interpretation.

> *The State's averments that ...* "that cap is a cap as to *actual and immediate incarceration" may well have been clear to the State, defense counsel and the court. But the record of the plea hearing does not persuade us that Petitioner "reasonably understood"* (as that phrase is explicated in *Cuffley* ) *the maximum agreed-upon sentence to be.* No one mentioned, much less explained to Petitioner on the record, that a sentence greater than the forty-three year "cap" could be imposed, with a suspended portion of the sentence in excess of those forty-three years. Neither did the State, defense counsel, or the court explain for the

record that the words "guidelines range" referred solely to executed time.

424 Md. at 524, 36 A.3d 499 (emphasis supplied).

The Court of Appeals, moreover, also made explicit what had theretofore been only implicit, to wit, that a sentence in excess of the sentencing cap agreed upon in a binding plea agreement is *ipso facto* an illegal sentence cognizable under Rule 4–345(a).

> We have said that the State, as well as the Court of Special Appeals, *see Matthews,* 197 Md.App. at 375, 13 A.3d at 840, are of the view that a sentence that exceeds the sentence agreed upon as part of a binding plea agreement is not cognizable under Rule 4–345(a). *To our knowledge, we have not had the occasion before now to respond directly to a fully briefed argument to that effect.* So, *we make clear with this opinion* what we believe to be strongly suggested by our opinion in *Solorzano,* and stated more plainly in *Cuffley, that such an illegal sentence is cognizable under Rule 4–345(a).*

424 Md. at 514, 36 A.3d 499 (emphasis supplied). A sentence's exceeding a limit set in a plea agreement is tantamount to its exceeding a legislatively imposed statutory upper limit.

## Inherent Versus Procedural Illegalities

A distinction that is sometimes difficult for the zealous advocate to appreciate is that it is not the degree or virulence of the illegality that makes one allegedly flawed sentence cognizable under Rule 4–345(a) while another (perhaps even more flagrantly flawed) is completely immune from review. Rule 4–345(a)'s threshold concern is not with the severity of the alleged infirmity but only with its situs. *Matthews v. State, supra,* 197 Md.App. at 367–68, 13 A.3d 834 stressed the distinction:

> The semantic problem arising out of those very different contexts is that the phrase "illegal sentence" has variable connotations and shifting meanings. *Of all the illegal sentences that might deserve immediate appellate vacating in*

*the broad context of direct review, only a small fraction are even cognizable in the austerely limited context of Rule 4–345(a) review.* For the very reason that its meaning may shift, the phrase "illegal sentence" should never be lifted out of that first context and casually inserted into the second. The words may be the same, but they no longer mean the same thing. *We cannot agree with Gertrude Stein that an illegal sentence is an illegal sentence is an illegal sentence, because sometimes it is not.*

(Emphasis supplied).

A Rule 4–345(a) hearing does not ordinarily require any factfinding. Even in terms of argument, it is seldom necessary to look upstream to some earlier point along the adjudicative continuum. The boundary markers that are relied upon to measure the inherent or facial legality of the sentence are generally well settled and essentially unchangeable. The only exception is the sentencing cap established by a plea agreement, which must, of course, be determined on an *ad hoc* basis by looking to the record of the hearing at which the plea was taken. Other illegalities, to be sure, may contribute to, or even produce, the challenged sentence, but they do not inhere in the sentence itself. A Rule 4–345(a) hearing is not a belated appeal. To distinguish these two very different types of illegality, the best teaching tool may be to look at representative examples.

## A. Inherent Illegality Type A: A Sentence That Exceeds the Sentencing Cap

*Dotson v. State,* 321 Md. 515, 583 A.2d 710 (1991); *Tweedy v. State,* 380 Md. 475, 845 A.2d 1215 (2004); and *Solorzano v. State,* 397 Md. 661, 919 A.2d 652 (2007), were not Rule 4–345(a) cases. Each opinion nonetheless held clearly that a sentence in excess of the sentencing cap established by the plea agreement was illegal *per se.*

The three recent guilty plea cases reaffirm that sentencing limitation in a four-square Rule 4–345(a) context. In *Cuffley v. State, supra,* the State and the sentencing judge understood

"a sentence within the guidelines" to refer to unsuspended "hard time" and not to the total sentence, which statutorily could have been up to 15 years. The Court of Appeals, relying on *Dotson, Tweedy,* and *Solorzano,* held that the defendant reasonably understood the Guidelines' upper limit of eight years to be a cap on the total sentence and that the defendant's reasonable understanding was controlling. The ultimate sentence of 15 years with all but six years suspended was, therefore, held to be inherently illegal because the total sentence was in excess of the agreed sentencing cap.

*Baines v. State, supra,* also concerned a "split sentence" (a partially suspended sentence) and was essentially indistinguishable from *Cuffley.* The plea agreement there was for two sentences for armed robbery to be "within the guidelines," to wit, between seven and thirteen years. The ultimate combined sentences of 1) 20 years with all but 7 suspended and 2) a consecutive 20 years with all but 6 suspended fell within the State's and the sentencing judge's interpretation of "hard time" but exceeded the defendant's expectation as to total time. Accepting the defendant's understanding as defining the plea agreement itself, the Court held the sentence to be illegally excessive.

In *Matthews v. State, supra,* another "split sentence" was held to be excessive because, although the "hard time" was within the terms of the agreement, the total time was not. The plea agreement was held to be in conformity with the defendant's understanding of it and the sentencing cap it established was illegally exceeded.

## B. Inherent Illegality Type B: A Sentence That Should Never Have Been Imposed

More common than the illegal sentences that exceed the sentencing cap are the sentences that are illegal because they should never have been imposed in the first place. *Alston v. State,* 425 Md. 326, 339, 40 A.3d 1028 (2012), held clearly:

There is one type of illegal sentence which this Court has consistently held should be corrected under Rule 4–345(a).

> Where the trial court imposes a sentence or other sanction upon a criminal defendant, and *where no sentence or sanction should have been imposed, the criminal defendant is entitled to relief under Rule 4-345(a).*

(Emphasis supplied). See also *Taylor v. State*, 407 Md. 137, 141 n. 4, 963 A.2d 197 (2009) ("[A] motion to correct an illegal sentence is entertained ... where ... the sentence never should have been imposed."); *State v. Wilkins*, 393 Md. 269, 273–74, 900 A.2d 765 (2006) ("[A] motion to correct an illegal sentence can be granted ... where no sentence should have been imposed.").

In *Ridgeway v. State*, 369 Md. 165, 797 A.2d 1287 (2002), the defendant was sentenced on three first-degree assault charges on which the jury had acquitted him. The Court of Appeals held, "The sentence for the three first degree assault convictions were illegal and properly vacated pursuant to subsection (a) of Rule 4–345. A court cannot punish a defendant for a crime for which he or she has been acquitted." 369 Md. at 171, 797 A.2d 1287.

As an interesting variation on that theme, in *Johnson v. State*, 427 Md. 356, 47 A.3d 1002 (2012), the defendant's 30–year sentence for assault with intent to murder should never have been imposed for the simple reason that the defendant had never been charged with and had never been convicted of assault with intent to murder.

In *State v. Garnett*, 172 Md.App. 558, 559, 916 A.2d 393 (2007), this Court held that "a sentence of 'restitution' cannot be imposed on a defendant who has been found not criminally responsible by reason of insanity."

In *Moosavi v. State*, 355 Md. 651, 736 A.2d 285 (1999), the defendant was "charged ... under the wrong statute." 355 Md. at 663, 736 A.2d 285. The Court of Appeals concluded that "where a defendant has been charged and convicted under an entirely inapplicable statute ... the resulting sentence under the inapplicable statute is an illegal sentence which may be challenged at any time." 355 Md. at 662, 736

A.2d 285. And see *Campbell v. State*, 325 Md. 488, 508–09, 601 A.2d 667 (1992).

In *Jones v. State*, 384 Md. 669, 866 A.2d 151 (2005), the Court of Appeals held that the defendant should never have been sentenced on one of four apparent convictions where, with respect to that one conviction, the verdict (albeit recorded on the verdict sheet) as to that conviction had never been orally announced in open court. "We conclude a sentence is illegal if based upon a verdict of guilt that is not orally announced in open court in order to permit the jury to be polled and hearkened to the verdict." 384 Md. at 672, 866 A.2d 151.

In *Alston v. State*, 425 Md. 326, 40 A.3d 1028 (2012), a post-conviction trial court had vacated Alston's convictions and sentences and granted him a new trial. After an unauthorized and untimely motion for reconsideration by the State, the trial court struck its earlier order and re-imposed the original convictions and sentences. The Court of Appeals held that the resentencing was inherently illegal. The original sentences had been properly vacated and no basis had been established for reimposing them.

Two of the Rule 4–345(a) illegal sentences involved the imposition of sanctions, as a part of the sentence, where the sanctions had never been legally authorized. In *Holmes v. State*, 362 Md. 190, 763 A.2d 737 (2000), the Court held that, in the absence of statutory authority, the imposition of house detention or house arrest as a condition of probation constitutes an inherently illegal sentence. And see *Bailey v. State*, 355 Md. 287, 734 A.2d 684 (1999). In *Montgomery v. State*, 405 Md. 67, 950 A.2d 77 (2008), the defendant, after serving the five unsuspended years of a 25–year sentence and an additional five years of supervised probation, was found to be in violation of probation. The court sentenced the defendant to serve ten years but deferred the date to begin serving the sentence for three years and indicated that if, at the end of the three years the defendant had been on good behavior, the court would modify the sentence so that no time would be

served. The Court of Appeals held that although the common law allows for short periods of deferral of the execution of a sentence, there was no authority for the three-year deferral in this case. The sentence was, therefore, illegal within the contemplation of Rule 4–345(a).

A recurring problem, in Maryland and elsewhere, is the situation where there was a single conviction but where that conviction is representative of a larger criminal scheme that has victimized other similarly situated persons. If the investigation reveals the other victimizations, may the sentencing judge order restitution beyond the case on which the verdict has been rendered? Maryland first addressed this issue in this Court's opinion in *Mason v. State,* 46 Md.App. 1, 415 A.2d 315 (1980). At the outset, we stated what was a question of first impression:

> The single issue before us on this appeal is the permitted breadth of an order of restitution. *May a convicted thief* (we use that term in its broadest and most informal sense) *be required, as a condition of probation, to make restitution to the world for his multitudinous peculations or must the restitution be limited by the losses established in the actual case, the conviction as to which serves as the predicate for the sentence?* We hold that *the latter is the appropriate and legally required limitation upon court-ordered restitution.*

46 Md.App. at 2, 415 A.2d 315 (emphasis supplied).

We examined the Maryland statutes regulating restitution and concluded that restitution was limited to the case on which a criminal sentence could be imposed.

> *The issue now before us is one of first impression.* Although the Maryland statutes do not, in terms, preclude the granting of restitution for other crimes not charged or proved, *the clear sense of § 640(b) and § 145 seems unmistakably to contemplate restitution for the crimes as to which incarceration might otherwise be imposed.*

46 Md.App. at 6, 415 A.2d 315 (emphasis supplied).

We then surveyed the national law and concluded that "the experience and wisdom of our sister common-law jurisdictions

helps to persuade us that this is clearly the correct result."
46 Md.App. at 6, 415 A.2d 315. We concluded that the addi-
tional order of restitution rendered the sentence excessive
and, therefore, illegal.

> We hold that in this case *the restitution ordered* in the
> amount of $3,949.61 *to Mr. and Mrs. Bennett was legal* but
> that *the open-ended order to make additional restitution to
> a wide variety of "victims"* to be determined by the proba-
> tion department and in amounts to be determined by the
> probation department *exceeded the sentencing authority of
> the court.*

46 Md.App. at 9, 415 A.2d 315 (emphasis supplied).

■ The Court of Appeals confirmed our result five years
later. In *Walczak v. State,* 302 Md. 422, 488 A.2d 949 (1985),
an order to pay restitution to the victim of a crime of which
the defendant had not been convicted was held to be inherent-
ly illegal. No sentence, including an order of restitution,
should have been imposed. "Clearly, then, restitution is pun-
ishment for the crime of which the defendant has been convict-
ed. Restitution depends on the existence of that crime, and
the statute authorizes the court to order restitution only
where the court is otherwise authorized to impose punish-
ment." 302 Md. at 429, 488 A.2d 949.

In *Chertkov v. State,* 335 Md. 161, 642 A.2d 232 (1994), the
trial court approved a plea agreement and imposed a sentence
in accordance with that agreement. Subsequently, however,
the court granted a defense motion to modify the sentence and
granted the defendant probation before verdict. The State
appealed, arguing that the downward modification was in
violation of the plea agreement. The Court of Appeals held
that the State had no right to appeal, but nonetheless, in
considered dicta, addressed the merits of the State's conten-
tion. It announced that the State, as well as the defendant,
has the right to rely on the terms of the plea agreement.

> [I]t is clear that a court that binds itself to fulfill the plea
> agreement thereby relinquishes his or her right to modify
> the sentence, thereby imposed, absent the consent of the

parties, and, in particular, in the case of reducing the sentence, absent the consent of the State.

335 Md. at 174–75, 642 A.2d 232.

The common denominator in all of these instances of Rule 4–345(a) sentence illegality is that once the objective outer boundary markers for the sentence have been established, the illegality that inheres in the sentence itself is obvious. Even if all of the antecedent proceedings had been procedurally impeccable, the illegality of the sentence is facial and self-evident.

## C.  Illegalities That Do Not Inhere In The Sentence

In noting the difference between an illegality in the sentencing process that may be noticed on direct appeal and the far more limited illegality that may be noticed under Rule 4–345(a), Judge Greene spoke for the Court of Appeals in *State v. Wilkins*, 393 Md. 269, 284, 900 A.2d 765 (2006):

> [W]e note that *any illegality must inhere* in the sentence, *not in the judge's actions*. In defining an illegal sentence *the focus is not on whether the judge's "actions" are per se illegal* but whether the sentence itself is illegal.

(Emphasis supplied).

In *State v. Kanaras*, 357 Md. 170, 742 A.2d 508 (1999), this Court initially agreed with the defendant that intervening actions by the Governor and by the Parole Commission had rendered his sentence an illegal one under Rule 4–345(a). The Court of Appeals, 357 Md. at 176, 742 A.2d 508, summarized the reasoning of this Court:

> The Court of Special Appeals, in an unreported opinion, held that the actions of the Parole Commission, the Commissioner of Correction, and the Governor had the effect of changing Kanaras's sentence from one of life imprisonment to life imprisonment without the possibility of parole. The intermediate appellate court went on to hold that this change violated the *ex post facto* clauses of the federal and state constitutions and, therefore, rendered Kanaras's sentence illegal.

On the appeal, however, the Court of Appeals overruled this Court and held that even improper actions by the various officials would not, for Rule 4–345(a) purposes, constitute an illegality that inhered in the sentence itself.

> The prior acts of the Parole Commission and the Commissioner of Correction, which had the effect of denying inmates in Kanaras's position the parole consideration to which they were entitled under the statutory scheme, did not render illegal Kanaras's sentence. *The illegality was in the conduct of the Parole Commission and the Commissioner of Correction; it did not inhere in Kanaras's sentence.*

357 Md. at 185, 742 A.2d 508 (emphasis supplied).

In *Randall Book Corporation v. State*, 316 Md. 315, 558 A.2d 715 (1989), one of the contentions raised by the defendant corporation was that the multiple sentences were illegal because the sentencing judge had been motivated by prejudice and ill will. In distinguishing what might be an illegal sentence on direct appeal from an illegal sentence pursuant to Rule 4–345(a), the Court of Appeals observed:

> It is true ... that *whether the trial judge was motivated by ill-will, prejudice, or other impermissible considerations in imposing sentence will be considered on direct appeal.* However, *while improper motivation may justify vacation of the sentence, it does not render the sentence illegal within the meaning of Rule 4–345.*

316 Md. at 322–23, 558 A.2d 715 (emphasis supplied).

In *Chaney v. State*, 397 Md. 460, 918 A.2d 506 (2007), the defendant claimed that his sentence was illegal because two conditions of probation—an order to make restitution and an order to maintain full employment—had been illegally imposed because no evidentiary foundation had been shown for either of them, not to mention the fact that the victim had never requested restitution. The Court of Appeals held that "there is nothing intrinsically illegal about either condition here." The complaint that "no evidentiary foundation was laid to support them" would allege a procedural flaw and would not

establish an illegality that inhered in the sentence *itself.* 397 Md. at 467, 918 A.2d 506.

In *Baker v. State,* 389 Md. 127, 883 A.2d 916 (2005), a death penalty case, the defendant claimed that the sentence was illegal because he had erroneously been precluded from entering into evidence an empirical government-sponsored study ostensibly showing that the imposition of capital punishment in Maryland over a 21–year period showed both racial and geographic bias. The Court held that, even in a death penalty case, the failure of the trial court to consider "an arguably relevant empirical study ... the results or conclusions of which assertedly support an allegation of constitutional error contributing to the imposition of [the defendant's] death sentence," did not constitute a ground "upon which relief may be considered under Rule 4–345(a)." 389 Md. at 139, 883 A.2d 916. In *Evans v. State,* 389 Md. 456, 462–65, 886 A.2d 562 (2005), the issue was precisely the same as in *Baker* and the result was precisely the same.

In *Hoile v. State,* 404 Md. 591, 948 A.2d 30 (2008), the petitioner claimed that, after his sentence had been modified downward on reconsideration, the subsequent vacating of that reconsideration and the reimposition of a harsher original sentence rendered the new sentence illegal under Rule 4–345(a). The Court of Appeals held, 404 Md. at 623, 948 A.2d 30, that no illegality inhered in the sentence itself.

> Palmer and the State do not allege that the sentence of probation imposed at the April 2005 hearing exceeded any statutorily prescribed limits or violated any substantive criminal law. *The sentence is not illegal on its face, and accordingly, the sentence is not illegal.*

(Emphasis supplied).

In *Pollard v. State,* 394 Md. 40, 904 A.2d 500 (2006), the claim was that the sentence of life imprisonment was illegal because the sentencing judge had failed to realize that he had the discretion to suspend all or part of the sentence. In holding that such a claim was not cognizable under Rule 4–345(a), the Court of Appeals stated:

Because the alleged illegality did not inhere in the sentence itself, the motion to correct an illegal sentence is not appropriate. *The sentence imposed was neither illegal, in excess of that prescribed for the offense* for which Petitioner was convicted, *nor were the terms of the sentence itself statutorily or constitutionally invalid.*

394 Md. at 41, 904 A.2d 500 (emphasis supplied). The Court of Appeals dealt with the same failure of the sentencing judge to exercise discretion in *State v. Wilkins,* 393 Md. 269, 900 A.2d 765 (2006). On that ground this Court had given the petitioner relief.

The intermediate appellate court held that the sentencing court's "failure to recognize its right to consider suspending a portion of ... [a life] sentence renders the sentence illegal." *Wilkins v. State,* 162 Md.App. 512, 525, 875 A.2d 231, 239 (2005).

393 Md. at 272, 900 A.2d 765. The Court of Appeals reversed this Court and held squarely that the failure of the sentencing judge to exercise discretion is not an illegality inhering in the sentence itself.

We hold that *a sentencing judge's failure to recognize his or her right to exercise discretion in the imposition of a sentence does not render the sentence illegal* within the meaning of Md. Rule 4–345(a).

*Id.* (emphasis supplied).

## Timeliness Is Irrelevant

■ The sentence that is the focus of this appeal was imposed on November 26, 2008. The appellant first challenged its legality on May 21, 2012, three years and six months after its imposition. That delay, however, does not in any way compromise the appellant's entitlement to raise a challenge to the legality of a sentence under Rule 4–345(a). In *Baker v. State,* 389 Md. 127, 883 A.2d 916 (2005), the contention that the sentence was illegal came 12 years after it had been imposed. In *State v. Kanaras,* 357 Md. 170, 742 A.2d 508 (1999), the Rule 4–345(a) charge of sentence illegality

was first made 14 years after the sentence had been pronounced. In *Johnson v. State*, 427 Md. 356, 47 A.3d 1002 (2012), the attack on the sentence came 16 years after the sentence had been imposed. In *Pollard v. State*, 394 Md. 40, 904 A.2d 500 (2006), the claim that a sentence was illegal was first made 28 years after the sentence was first imposed. In *State v. Wilkins*, 393 Md. 269, 900 A.2d 765 (2006), the claim of sentence illegality came 31 years after the sentence was imposed. Despite their vintage, each of these claims was just as viable as if it had come, following the pronouncement of the sentence, before the Earth had completed a single revolution around the Sun. *Johnson v. State, supra*, 427 Md. at 367–68, 47 A.3d 1002; *Chaney v. State*, 397 Md. 460, 466, 918 A.2d 506 (2007); *State v. Griffiths*, 338 Md. 485, 496, 659 A.2d 876 (1995).

### The Remedy Sought

In Rule 4–345(a), the key verb is "correct." The only thing subject to correction, moreover, is "an illegal sentence." No matter what antecedent procedural improprieties a Rule 4–345(a) hearing might show, the underlying conviction itself is not in jeopardy. There are other avenues available for challenging allegedly erroneous convictions and those remedial avenues have, of course, their attendant constraints and limitations. As Judge Greene explained for the Court of Appeals in *State v. Wilkins*, 393 Md. 269, 273, 900 A.2d 765 (2006):

> [A] motion to correct an illegal sentence is not an alternative method of obtaining belated appellate review of the proceedings that led to the imposition of judgment and sentence in a criminal case.

In the context of Rule 4–345(a), the only purpose a court might ever have for looking upstream to trial or pretrial proceedings would be to establish the boundary markers by which to measure the ultimate sentence itself, such as the precise terms of a plea agreement. The focus is not on those earlier proceedings *per se.* We examine those proceedings for the limited purpose of establishing the specifications by which

to measure the ultimate sentence. What were the actual convictions for which sentences might be imposed? What was the plea agreement that set a cap on the sentence? Should the review reveal that the sentence was, indeed, inherently illegal, the remedy would be to vacate the sentence and to remand the case to the lower court for the imposition of a legal sentence. In this case, for example, the appellant sought a sentence without any order of restitution.

## Rule 4–345(a) Review Is *De Novo*

Rule 4–345(a) appellate review deals only with legal questions, not factual or procedural questions. Deference as to factfinding or to discretionary decisions is not involved. Once the outer boundary markers for a sentence are objectively established, the only question is whether the ultimate sentence itself is or is not inherently illegal. That is quintessentially a question of law calling for *de novo* appellate review.

## The Appellant Agreed to Restitution

The core message of the entire *Cuffley–Baines–Matthews* line of cases is that when a defendant foregoes a trial and enters a guilty plea pursuant to an agreement with the State which is then accepted by the court, the defendant is entitled to have the State and the court honor the terms of that agreement. In this case, the orders of restitution did not dishonor any agreement entered into by the appellant. Even before he entered his guilty pleas on September 2, 2008, the appellant had unequivocally agreed that he would be ordered to make restitution. In the colloquy of September 2 there is not a remote hint that the appellant thought otherwise or had any reason to think otherwise.

Prior to the guilty plea hearing, the appellant, along with his counsel, had executed with the State a tightly-packed thirteen-page Proffer of Proof in Support of Defendant's Plea of Guilty. The Proffer of Proof set forth, *inter alia,* a statement of facts describing how the appellant had engaged in an unlawful scheme that had defrauded numerous investors of substantial sums of money. The Proffer of Proof not only described the

fraudulent scheme generally but set forth in elaborate detail the specific losses incurred by three of the victims. With respect to the financial losses incurred by the other victims, the Proffer of Proof contained the following acknowledgment:

> *These three victims are simply examples. By entering this plea of guilty, defendant Carlini acknowledges that* all victims listed in the Indictment and any additional victims noted in the discovery would testify to similar narratives and *all of these individuals are entitled to judgments of restitution* in this case.

(Emphasis supplied).

The last page of the Proffer of Proof contained the following acknowledgment signed by the appellant:

### Defendant's Acceptance

> *I have read each of the thirteen pages and exhibits constituting this Proffer of Proof and have discussed it with my attorney,* Louis Fireison, Esquire. *I fully understand this Proffer of Proof and agree to it without reservation. I do this* voluntarily and of my own free will, *intending to be legally bound.* No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this document fully.
>
> Date: <u>09/2/08</u> [handwritten]
>
> <u>/s/</u>
> <u>Joseph A. Carlini</u>
> Defendant

(Emphasis supplied).

The appellant's acknowledgment was followed by an acknowledgment by his attorney.

### Attorney's Acknowledgment

> *I have read each of the thirteen pages* and exhibits constituting this Proffer of Proof, *reviewed them with my client, and fully discussed each of the elements of this crime with my client.* These pages accurately set forth the facts of this case. I concur in my client's desire to plead guilty and admit these facts.

Date:  09/2/08 [handwritten]

/s/

Louis Fireison, Esquire

(Emphasis supplied).

After Judge Rowan explained to the appellant the rights that he would be waiving if he pled guilty and after he confirmed that the appellant was knowingly and voluntarily waiving those rights, he prepared to receive the Proffer of Proof.  Because the document was thirteen pages in length and because it had already been received and read by the judge and because it had been prepared and signed by both the State and the appellant, Judge Rowan agreed to receive the document in the record but did not require the State to read it aloud.

[THE COURT]:  Now at this point, *the State is going to make* a suggestion either in writing or oral of *what we call a proffer that I will give you and your attorneys a chance to correct if you believe it's incorrect,* but basically they're going to tell me what they would be able to prove had this case gone to trial.  All right.  You can have a seat, sir.

[CARLINI]:  Thank you.

[PROSECUTOR]:  Your Honor, *we have submitted to the Court the proffer of proof in support of the defendant's plea of guilty, which is signed by the defendant on the last page and signed by his counsel, as well,* on that page.  That factual proffer sets out a summary of what the State's evidence would be to satisfy each element of the three charges.  *I'm happy to read that if the Court desires, but I'm also happy to simply have the Court accept that proffer as a filing in the court jacket,* as well.

[THE COURT]:  All right.  *There's no necessity for you to read it out* loud.  *The Court has read it and was presented a copy of it prior to the actual signing of the proffer of proof.  Would you accordingly file it—*

[PROSECUTOR]:  Yes, Your Honor.  *I think the original is with the clerk signed by—*

[THE COURT]:  Have you received them, Madam Clerk?

[THE CLERK]: [no audible response]

[THE COURT]: Very well. *The Court will receive it as the proffer by proof* by the State pursuant to the plea of guilty. The Court finds that based upon the proffer that there is a factual basis to support the proof of the crimes to which the defendant is pleading guilty. *Are there any changes or additions to the proffer by the Defense?*

[DEFENSE COUNSEL]: *None, Your Honor.*

(Emphasis supplied). The appellant fully agreed to the receipt of the Proffer of Proof into the record without changes or additions.

### The Best Evidence of a Contract Is the Contract

As we analyze this case, the contents of that thirteen-page Proffer of Proof are as indisputably before us for our consideration as are any words spoken orally at that hearing of September 2, 2008. The appellant seeks to wriggle out from under the foreclosing effect of the contractual plea agreement he entered into, read, and signed by arguing that the thirteen-page written and signed plea agreement was itself somehow "extrinsic evidence" that may not be considered. The appellant, however, is simply grabbing phrases, like "extrinsic evidence," out of context. This minutely detailed written and signed plea agreement, formally offered and received in the record at the guilty plea hearing as evidence of the voluntariness and knowing nature of the appellant's plea, is quintessentially *intrinsic evidence.* This recognition is at the very core of the Best Evidence Rule. A plea agreement is contractual in nature. *Cuffley v. State,* 416 Md. at 579, 7 A.3d 557; *Tweedy v. State,* 380 Md. 475, 482, 845 A.2d 1215 (2004); *State v. Parker,* 334 Md. 576, 604, 640 A.2d 1104 (1994). The best evidence of what the contract (the plea agreement) is or what the contract says is indisputably the original contractual document itself.

Judge Rowan, prior to accepting the plea, had fully read the plea agreement. With the approval of all parties, he formally received the written agreement in evidence and had it filed

with the clerk as part of the record—not simply the record of the case generally, but the specific record of the plea hearing itself.

The appellant does not claim (nor could he honestly do so) that the ultimate sentence of November 26, 2008 was an inherently illegal sentence in excess of what he had actually agreed to. The appellant contends, rather, that because Judge Rowan did not read aloud, or direct the prosecutor or defense counsel to read aloud, each and every line of that thirteen-page document in open court, the agreement does not exist or, at least, is not cognizable as evidence of what was agreed to at that plea hearing of September 2, 2008. None of the caselaw remotely suggests so preposterous a conclusion.

### A Merely Procedural Hypothesis

■ How the judge conducts the plea hearing is, moreover, quintessentially procedural. Even if we were to accept, purely *arguendo*, that the failure of the trial judge to take the documentary exhibit and then to read every line of it aloud in open court was somehow a procedural error pursuant to Rule 4–243(d), such a hypothetical error would self-evidently be more of a procedural glitch in the sentencing process than substantive evidence that the ultimate sentence was illegally in excess of what the appellant had actually agreed to. What the appellant here challenges is not the agreement itself but only the judge's alleged procedural lapse of not reading it aloud. In appellate brief, the appellant argues:

> Because the State failed to read its proffer into the record and make it clear during the colloquy that payment of restitution was one of the conditions of the plea, that language cannot be viewed as one of the terms of the plea agreement.

■ In terms of what is cognizable under Rule 4–345(a) and what is not, this Court, in *Corcoran v. State*, 67 Md.App. 252, 255, 507 A.2d 200 (1986), very carefully explained the critical difference between a procedural error and a substantive illegality.

*The notion of an "illegal sentence"* within the contemplation of the *Walczak* decision *deals with substantive law, not procedural law.* It has obvious reference to a sentence which is beyond the statutorily granted power of the judge to impose. *It does not remotely suggest that a sentence, proper on its face, becomes an "illegal sentence" because of some arguable procedural flaw in the sentencing procedure.*

(Emphasis supplied). See also *State v. Wilkins,* 393 Md. at 275, 900 A.2d 765 ("An error committed by the trial court during the sentencing proceeding is not ordinarily cognizable under Rule 4–345(a) where the resulting sentence or sanction is itself lawful."); *Burch v. State,* 346 Md. 253, 289, 696 A.2d 443 (1997) ("Not every procedural irregularity, even in a capital sentencing proceeding, results in a sentence not permitted by law.").

### Subsequent Confirmation of Appellant's Understanding

If, hypothetically, there should appear a difference between what a defendant thought he was agreeing to at the time he entered a guilty plea and what he later learned the agreement had apparently been, that might influence our analysis. It is unnecessary for us to consider such a possibility, however, in the case now before us. In this case the appellant's subsequent words and actions fully confirmed his understanding on September 2, 2008, that he would be required to make financial restitution to his victims.

At the sentencing hearing, the appellant made a lengthy plea to the court to be released from incarceration precisely so that he could earn the money with which to make restitution, including the following passages:

I realize it will take a long time to correct this, but if I were to spend time in jail I would be wasting that time when *I could possibly [be]* productive, and earning a living, and *earning money towards restitution.*

. . . .

*I want to,* at some point in time, *get these people paid back,* but I, there is no possible way of me going away for an

extended, I know I have to be punished, that's not what I'm saying, *but for me to go away for an extended period of time, there would be no way of me ever being able to recoup anybody's money.*

(Emphasis supplied).

As a part of announcing his sentence, Judge Rowan explained a key condition of the probation:

Now you're going to then be on probation for a period, supervised probation for a period of five years, and *here's the condition of your probation.* The condition of your probation is *you are to make, within three months after your release from jail* and/or the Pre–Release Center and begin working, *restitution is the amount of $2,000 each and every month for the period of five years,* which is to be paid to the Department of Parole and Probation.

(Emphasis supplied).

In the probation order itself, reference was made to the fact that the appellant would be subject to "All Standard Conditions" of probation, which included Standard Condition # 10:

10. Pay all fines, costs, restitution, and fees as ordered by the court or as directed by your supervising agent through a payment schedule ... Restitution of *$2000/mo.* [handwritten] to *victims of restitution order* [handwritten] ...

The appellant signed the order, confirmed that he understood those conditions and agreed to abide by them.

### Probation Implies the Possibility of Restitution

At the guilty plea hearing itself, the trial judge and the appellant had discussed the terms of the plea agreement. Judge Rowan, on the record, made it very clear that although he would not sentence the appellant to more than four years of actual time to be served, he could give a longer sentence and then suspend all but four years.

[THE COURT]: The further element of the plea agreement is that the Court may not sentence you to any more than four years of actual time to be served in jail. *I could sentence you as much as 15 years and suspend all but four.*

But what I can't do is give you any more than four years of actual time you have to serve in jail.

(Emphasis supplied).

In accepting the risk of a suspended sentence, the appellant was necessarily accepting the imposition of probation. Maryland Code, Criminal Procedure Article, § 6–222(a) provides:

(a) *Limits on probation after judgment.*—A circuit court or the District Court may:

(1) impose a sentence for a specified time and provide that a lesser time be served in confinement;

(2) *suspend the remainder of the sentence; and*

(3)(i) *order probation for a time* longer than the sentence but, subject to subsections (b) and (c) of this section, *not longer than:*

1. *5 years if the probation is ordered by a circuit court.*

(Emphasis supplied).

In pointing out that a suspended sentence includes a period of supervised probation as a matter of course, Judge Woodward explained in *Rankin v. State,* 174 Md.App. 404, 410, 921 A.2d 863, *cert. denied,* 400 Md. 649, 929 A.2d 891 (2007):

Thus the language of the statute indicates that, *when a trial court suspends a sentence, it will impose probation as a matter of course.* The connection between a suspended sentence and probation is also illustrated, albeit in a different context, in *Moats v. Scott,* 358 Md. 593, 751 A.2d 462 (2000). There, the Court of Appeals explained the options available to a sentencing judge, including imposing a "split sentence":

A *third option—one that is frequently used—is the "split sentence"* provided for in § 641A(a)(3). *That subsection allows a court to "impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of 5 years."*

*Id.* at 595, 751 A.2d 462; see also *Cathcart v. State,* 397 Md. 320, 327, 916 A.2d 1008 (2007) (stating that if a court imposes a split sentence, *"there must be a period of probation attached to the suspended part of the sentence"*). (Emphasis supplied).

*Rankin,* 174 Md.App. at 410–11, 921 A.2d 863, went on to explain how a plea agreement acknowledging the possibility of a suspended sentence automatically implies the imposition of probation.

> In the case *sub judice,* it is clear that *a probationary period was implicit in the terms of the plea agreement.* Although *the prosecutor did not specifically discuss probation,* he told the trial court that the only sentencing limitation in the agreement was that the "active cap," *i.e.,* the executed portion of the sentence, was three years. *The written agreement recited that there could be additional suspended time* and that there was "no other sentencing limitation except that provided by law." Thus *the agreement gave the trial court the authority to suspend part of the sentence and impose probation, which it did.*

(Emphasis supplied). Judge Woodward's analysis concluded:

> Finally, because *a period of probation must be attached to a suspended sentence,* we hold that *the right to impose a period of probation is included in any plea agreement that provides for a suspended sentence.* If we were to hold otherwise, the imposition of a suspended sentence would be meaningless.

174 Md.App. at 411–12, 921 A.2d 863 (emphasis supplied) (footnote omitted).

In *Lafontant v. State,* 197 Md.App. 217, 13 A.3d 56 (2011), this Court analyzed at length the symbiotic relationship between probation and restitution. The contention being urged by the appellant in *Lafontant* is indistinguishable from the contention being urged by the appellant here.

> *The State did not expressly require that appellant pay restitution as part of the plea agreement. Neither did the State expressly waive the right to request restitution,* either

by it or by the victim directly. *The question thus becomes whether the State, by failing to expressly include the issue of restitution in the agreement, effectively waived the* victim's *right to request restitution.*

*Appellant essentially argues that the State did just that,* because absent an affirmative inclusion of restitution in the agreement, it was reasonable for appellant to conclude that restitution was waived. *We disagree, and hold that appellant could not reasonably have believed that the terms of the bargain impliedly waived the victim's right to restitution.*

197 Md.App. at 233–34, 13 A.3d 56 (emphasis supplied).

Lafontant's single contention is almost precisely the contention raised by the appellant in the present case.

Appellant argues that "[n]either party nor the court ever implied [by] their actions or terms of the agreement that the appellant's sentence might include an order of restitution." Therefore, he concludes, a reasonable person in his position would not have understood the plea agreement as leaving open the possibility of restitution in the criminal proceeding.

197 Md.App. at 230, 13 A.3d 56.

The plea agreement in *Lafontant* is indistinguishable from the plea agreement in this case—a sentence that would include no more than four years of active incarceration:

The plea agreement was not for a specific sentence and was not even for a recommendation of a specific sentence. The agreement was that the State would recommend a sentence that would include no more than four years active incarceration. *At the time of the bargain, appellant should have understood that four years of active, unsuspended incarceration would implicate a period of probation.*

197 Md.App. at 234, 13 A.3d 56 (emphasis supplied). We pointed out that restitution is a known and standard condition of probation.

*[R]estitution is known to be a standard condition of probation.* See, e.g., Wayne R. Lafave et al., Criminal Procedure § 26.9(b) (3d ed. 2007) (*"One common condition of proba-*

*tion is that the defendant make payments* .... Sometimes the defendant must reimburse the county or state for certain expenses connected with the prosecution, ... [but] [m]ore *frequently the defendant is obligated to make restitution to the victim for his criminal conduct.*").

197 Md.App. at 235, 13 A.3d 56 (emphasis supplied).

■ As *Chaney v. State,* 397 Md. at 470, 918 A.2d 506, reminds us, an "order of restitution entered in a criminal case, even when attached as a condition of probation, is a criminal sanction—part of the punishment for the crime." See also *State v. Garnett,* 384 Md. 466, 475, 863 A.2d 1007 (2004). Restitution is the one condition of probation singled out for such mention because it is the one condition of probation that might readily, but mistakenly, be thought to be a civil sanction. With respect to any of the other conditions of probation, there is no danger that any of them could even be imagined to be a civil sanction. None of the other conditions, therefore, called for status clarification. The other standard conditions of probation, however, do carry similar penal implications. As a result of a criminal conviction followed by probation, there are imposed on a probationer a number of restrictions and obligations that do not inhibit an unconvicted person. They are penal sanctions, for a failure to abide by any of them could lead to a finding that the probationer is in violation of probation and might be required to serve the remainder of a previously suspended sentence. Each of those conditions implicitly admonishes the probationer, "Fail not, at your peril."

In *Chaney v. State,* the appellant contended that two of the conditions of his probation—1) that he make restitution and 2) that "he become either employed full-time or enrolled as a full-time student," 397 Md. at 463, 918 A.2d 506—were illegal sentences under Rule 4–345(a). For Rule 4–345(a) purposes, the Court of Appeals treated the two probationary conditions the same, holding that neither constituted an inherently illegal sentence.

*There is nothing intrinsically illegal about either condi-tion here. Restitution* in the amount of $5,000 *is permitted as a condition of probation* upon a conviction for second degree assault, *as is maintaining full-time employment or student status,* and appellant does not seem to contend otherwise. His complaint is that those conditions were inappropriate in this case, in large part because no eviden-tiary foundation was laid to support them, but, even if so, *that does not make the conditions intrinsically illegal.*

397 Md. at 467, 918 A.2d 506 (emphasis supplied).

■■■ A plea agreement that necessarily includes the possi-bility or probability of probation need not expressly spell out each and every standard condition of probation. The plea agreement need not spell out that the defendant could be in violation of probation if, for instance, he failed to report regularly to his probation officer or failed to get permission before changing his home address or used narcotic drugs or refused to allow his probation officer to visit his home. Of the ten Standard Conditions of Probation, Standard Condition # 10 deals with the obligation to make restitution.

10. Pay all fines, costs, restitution, and fees as ordered by the court or as directed by your supervising agent through a payment schedule.

That condition is no more subject to a requirement of express annunciation than are the other nine standard condi-tions. There is no prioritizing, as a matter of law, among the conditions of probation, the breach of any one of which could lead to a violation of probation. The appellant could easily have raised his present contention about any of the conditions of probation, had he been found to have been in violation of probation because of his failure to have satisfied such a condition. He would no more have succeeded with such a contention, however, than he will succeed with the contention he now makes.

■■■ The holding of *Lafontant,* 197 Md.App. at 236, 13 A.3d 56 was that the order of restitution did not breach the terms of the plea agreement.

*[A]ppellant should reasonably have known that the court could impose a period of probation, and that one of the conditions might be restitution* ... Unlike the plea agreement in *Cuffley,* where the court violated an express term of the agreement, *appellant understood that the one and only term in his plea agreement was that the State would not recommend more than four years active incarceration. The circuit court did not breach the terms of the agreement when it ordered appellant to pay restitution to the victim's representative.*

(Footnote omitted) (emphasis supplied). See also *Coles v. State,* 290 Md. 296, 305, 429 A.2d 1029 (1981) ("[T]he terms and conditions upon which probation is granted may include an order to pay restitution."). The failure of a plea agreement to mention restitution by no means implies that there is an agreed-upon sentencing cap that precludes restitution.

### Theft and Restitution

On the first count, the appellant was convicted of a felony theft scheme. Under Maryland Code, Criminal Law Article, § 7–104, dealing with "General theft provisions," the subsection setting out the penalty provisions applicable to the appellant, subsection (g)(1)(ii), expressly directs that restitution shall be made to the theft victims:

(g) *Penalty.*—(1) *A person convicted of theft of property* or services *with a value of:*

. . . .

(ii) *at least $10,000* but less than $100,000 *is guilty of a felony and:*

1. is subject to imprisonment not exceeding 15 years or a fine not exceeding $15,000 or both; and

2. *shall* restore the property taken to the owner or *pay the owner the value of the property* or services;

(Emphasis supplied).

In this case, the restitution was required as a matter of law.

### The Elephant In The Room

Although the matter of this comment had nothing to do with our disposition of this appeal, it is nonetheless a matter we feel compelled to note. The appellant's crime was no crime of violence with the possibility of property damage as an incidental collateral consequence. This crime was all about money. It was a highly sophisticated financial scam, referred to in the signed Proffer of Proof as "a classic Ponzi scheme." It ensnared 41 victims, with losses per victim in amounts of hundreds of thousands of dollars. In a period of slightly less than two years, approximately $7.2 million passed back and forth through various bank accounts.

The only way this appellant could have hoped to catch any sort of a break would have been by a commitment to make at least partial restitution to his victims. From the first word to the last word of plea negotiations, restitution was the elephant standing in the middle of the room. It was the *raison d'être* for even talking. For the appellant to pretend that he was blind to the elephant standing in front of him is surrealistic and his feigned surprise three and one-half years later is disingenuous in the extreme.

### Conclusion

In the last analysis, we need not decide whether this was a procedurally illegal sentence in the simple sense, not cognizable under Rule 4–345(a), or an inherently illegal sentence in the pluperfect sense, which is cognizable. We are pleasantly looking at a sentence not illegal in any sense. Judge Algeo was right in concluding that this was not a Rule 4–345(a) case.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**